Argued and submitted September 30, affirmed December 24, 2014

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ROBERT LOREN CROMBIE, JR.,
*Defendant-Appellant.*

Clackamas County Circuit Court
CR1212185; A152462

341 P3d 841

David Sherbo-Huggins, Deputy Public Defender, argued the cause for appellant. With him on the briefs was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Michael S. Shin, Senior Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Ortega, Presiding Judge, and DeVore, Judge, and Garrett, Judge.

ORTEGA, P. J.

## ORTEGA, P. J.

Defendant appeals a judgment holding him in contempt for violating a restraining order issued under the Family Abuse Protection Act (FAPA), ORS 107.718. He challenges the trial court's denial of his motion for judgment of acquittal, contending that the trial court erred in concluding that a document that he filed with the court in dissolution proceedings violated the FAPA order. We conclude that the trial court did not err in concluding that the document constituted a willful violation of the "no-contact" provision of the order and did not fall into an exception for documents filed with the court. Accordingly, we affirm.

"We review the denial of a motion for judgment of acquittal * * * to determine whether the record contains evidence from which a rational trier of fact, drawing all reasonable inferences in the light most favorable to the state, could find all elements of contempt beyond a reasonable doubt." *See State v. Graham*, 251 Or App 217, 218, 284 P3d 515 (2012).

The underlying facts are undisputed. Shortly before filing for divorce from defendant, the victim obtained a standard-form FAPA order that prohibited defendant from, among other conduct, "intimidating, molesting, interfering with or menacing" the victim. An exception to this restraint on contact with the victim provided that "nothing in this order prevents [defendant] from serving or providing documents related to a court * * * case to the [victim] in a manner permitted by law."

The victim then filed for dissolution of marriage, claiming the customary "irreconcilable differences." Both parties were unrepresented in the dissolution proceedings. Defendant filed a response and counterclaim, directly addressing the victim's proposed dispositions regarding property distribution and child custody. Defendant later sent the victim a five-page document captioned, "Addendem [*sic*] to Response and Counterclaim" ("addendum"), in which he disputed the victim's claim of "irreconcilable differences." In it, defendant listed reasons why the couple should not divorce, ostensibly addressing the court and referring to the victim in the third person:

"There are no truly irreconcilable differences between the parties and the current family crisis does not necessarily need to end in the Dissolution of this Marriage.

"[Defendant] * * * will accept the Dissolution of this Marriage, but prays that the Court and the [victim] would consider the following statement of facts:

"I love my wife more than anything in this world.

"I know I messed up big and did emotional damage that cannot easily be fixed, but that is not who I am. That is not what I have been about over the last 32 years.

"My every effort and my daily thoughts are always about my lovely wife and children. All I ever do is go about my daily efforts to try providing for my family and their future and while I am doing that I think only of how nice it will be to go home and see my wife's beautiful smile and smell her sweet smell as I hold her in my arms because when I am holding my wife, I know that everything will be OK.

"I would do anything for my wife, including suffering the pain of letting go; if that is what I must do for her to be able to be happy, but I believe that if we were to try Marriage Counseling and if we both tried to consider the other person's needs, we could work this problem out and heal the damage that has been done."

Defendant then proceeded to provide his account of various events that had transpired and apparently caused conflicts between the parties, to explain his own various choices, and to talk about his desire to "grow old" with the victim. He continued:

"If my wife has developed a relationship outside of the Marriage then I can understand why she has been unwilling to try any reasonable efforts to repair our Marriage and I wish the best for her.

"If my wife has not developed a relationship outside of our Marriage, or if she is willing to give up any other relationships, I would ask that she try one time to go to Marriage Counseling with me before finalizing this Dissolution of Marriage.

"If she has a relationship that she does not wish to give up, I concede and hope the best for them. I want her to be happy.

"If there is no other relationship then I would hope my wife to consider the following:

"We have no irreconcilable differences. I am so sorry for everything that I have ever done that has caused her unhappiness. I want nothing but her happiness. Looking into her eyes and holding her gives me so much peace. Her touch relieves all my stress. I have never been with another woman in my life and I don't want to be. I love her and want to share the rest of my life with her and grow old together and enjoy our children and grandchildren together, but her happiness i[s] far more important than mine. If she must divorce me to be happy then that is what I want too.

"I love her so much, I will always have a huge hole in my heart and life if we end our relationship[;] she is my soul mate and she completes me. I hope she can remember the good before throwing it all away."

In the concluding paragraphs, defendant addressed the victim more directly:

"I want to thank her for all the time I was allowed to spend with her. I am a much better person for it and I will always be happy to be her friend and/or lover.

"If this is the last thing we share together, I want her to know and remember that I am so sorry for ever making her sad even for a second, and that my heart is full of so much love for her that it will beat forever and forever testify that she is the most awesomest [*sic*] woman that ever existed.

"I want her to take care of herself and remember I want her to be as happy as possible even if it means she has to be with someone else.

"I wish we could talk to each other[;] I always have things that I want to share with her, but if she is not comfortable with that or it would be a complication to a relationship she has with someone else, then it is best that we don't.

"Bye Baby. : ) I will ALWAYS love you!

"Thank you for every second!"

Upon receipt of the addendum, the victim contacted the police, and a contempt proceeding was initiated.

In finding that defendant violated the FAPA order, the court noted that the addendum "seems to be a pleading" but that "it seems to me, plainly, that he—he is directly communicating to the [victim] when he says, "Bye-bye. [*sic*] I will always love you. Thank you for every second." The court asked, "How can [the victim] be protected from * * * no contact when he's doing it and he's actually using the Court * * * to do it?" The court had "no difficulty" finding beyond a reasonable doubt that defendant had violated the FAPA order.

On appeal, as below, defendant argues that the addendum did not violate the FAPA order, because it was "related to a court * * * case" within the meaning of the order. He argues for a broad definition of "related," noting that the addendum was an official pleading filed in the dissolution case and responded directly to the victim's claim of irreconcilable differences. He further contends that, even if his conduct did violate the order, the state failed to show that he did so willfully—that is, with specific intent to violate the order—as required by ORS 33.015, because such a counterintuitive interpretation of "related to a court * * * case" could not be imputed to a layperson like defendant.

The state responds that the document is a "thinly-veiled letter to the victim" and notes that defendant conceded at the hearing that the document was aimed at convincing the victim to reconsider going through with the dissolution:

"Did I want her to know my side of the story? I * * * had hoped she would—that she would consider all the information that * * * was in the document.

"* * * * *

"Like I said, I * * * would like her to know everything * * * in my heart."

The state contends that reading the exception for documents "related to" a court proceeding as broadly as defendant advocates would create "a loophole that effectively would swallow almost all prohibited contact"; rather than merely establishing that a document is filed in court, the court must determine that the contents of the document, "read as a whole and in context," indeed relate to the court case. Finally, the state argues that, in order to prove a willful violation, the state

need only show that there was a valid order, that defendant knew about it, and that he chose not to comply with it.

ORS 33.015(2)(b) defines "contempt of court" to include "[d]isobedience of, resistance to or obstruction of the court's authority, process, orders, or judgments" when "done willfully." As a preliminary matter, we agree with the state that, in order to prove a willful violation of the order, the state need show only the existence of a valid order and that defendant knew about it and chose not to comply with it. *See Graham*, 251 Or App at 220; *see also State v. Montgomery*, 216 Or App 221, 224, 172 P3d 279 (2007) ("[A] finding of 'willfulness' within the meaning of [the contempt] statute requires of finding of 'voluntary noncompliance' with a court order." (Citing *Couey and Couey*, 312 Or 302, 306, 821 P2d 1086 (1991).)). No more specific intent was required; defendant may have hoped he would not be considered to have violated the order, but the record establishes that he consciously chose to file the addendum despite knowing about the existence of the no-contact order.

That leaves the question of whether the addendum indeed constituted a violation of the FAPA order. When, as here, the facts are not in dispute, we review the denial of a motion for judgment of acquittal as a legal question. *State v. Nollen*, 196 Or App 141, 144, 100 P3d 788 (2004). "The construction of a temporary restraining order is a matter of law for the court." *Walti v. Willamette Industries, Inc.*, 100 Or App 89, 93, 784 P2d 1118, *rev den*, 309 Or 522 (1990). Given that defendant does not contest that the addendum otherwise constituted "intimidating, molesting, [or] interfering with" the victim in violation of the order, we must determine if the trial court correctly concluded that the addendum did not fall within the exception for "documents related to a court * * * case."

Under defendant's proposed reading of the FAPA order, any document filed with the court and addressed to a topic at issue in those proceedings is "related to a court case" within the meaning of the order. However, that proposed reading would allow defendant to easily subvert the intentions of the order, which are to prevent him from communicating with the victim. A reading of the addendum itself

leaves little doubt of its intended audience—not the court, but the victim, pleading with her to reconsider the divorce. Indeed, defendant's own testimony establishes his intention—already evident from the addendum itself—to use the document as a vehicle to communicate with the victim:

> "I felt that \* \* \* I was also able to contact her \* \* \* with court papers; that I could file court papers and that they were not restricted in any way \* \* \* [that] I believed that I could have addressed her if I wanted to in the court papers, but I was trying to be respectful and not do that. However, the wording in the [FAPA order], I read it to say that I was not restricted in anyway."

There is little doubt that, had defendant expressed the content of the addendum in a letter addressed directly to the victim, such a letter would violate the FAPA order. Defendant may not accomplish the same aim by expressing those contents in a pleading, including some statements addressed to the court, and filing it in the court proceeding. The trial court did not err in concluding that the addendum is not a document "related to a court case" within the meaning of the FAPA order.

Affirmed.