Submitted August 30, reversed November 2, 2016

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

KATIE MAYRIE NICHOLSON,
*Defendant-Appellant.*

Douglas County Circuit Court
14CR1867CT; A158526

383 P3d 977

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Laura E. Coffin, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Robert M. Wilsey, Assistant Attorney General, filed the brief for respondent.

Before Duncan, Presiding Judge, and DeVore, Judge, and Haselton, Senior Judge.

## HASELTON, S. J.

Defendant, who was adjudicated for contempt, ORS 33.015(2)(b), based on a violation of a restraining order issued pursuant to the Family Abuse Protection Act (FAPA), ORS 107.718, appeals. She contends that, in adjudicating her, the trial court rendered findings that not only contradicted, but precluded as a matter of law, a determination that the asserted violation was "done willfully." ORS 33.015(2)(b).[1] We agree. Specifically, as amplified below, the trial court's findings were irreconcilable with the legislatively intended content of "willfully" in this context. Accordingly, we reverse.

We recite the material facts in the light most favorable to the state, consistently with the trial court's express findings. In March 2014, defendant's estranged husband, T, obtained a FAPA restraining order, which provided, *inter alia,* that defendant, as respondent, "shall not knowingly be or stay within 200 feet" of T and prohibited defendant from "[c]ontacting, or attempting to contact, [T] in person." (Boldface omitted.)[2] In May and June of 2014, T, through a third person, communicated to defendant that he would like to attempt a reconciliation, to "patch things up," and proposed that they take a family trip together, with their young son, to the coast over Father's Day weekend. Defendant was aware of the existence of the restraining order and agreed to direct contact, including the proposed trip, only upon the restraining order being "dropped."

On either the Wednesday or Thursday before Father's Day, T, via email, informed defendant that he was "at the courthouse" with a coworker and "in the process of" dismissing the FAPA order. On the Friday before Father's Day, T presented defendant with "a new wedding ring,"

---

[1] ORS 33.015(2) provides, in part:

"'Contempt of court' means the following acts, done willfully:

"* * * * *

"(b) Disobedience of, resistance to or obstruction of the court's authority, process, orders or judgments."

[2] Although that order was issued and entered in Lane County, where the parties resided, this matter arose from Douglas County, where the asserted violation of that order, and consequent prosecution, occurred.

because (in defendant's words) "we thought that we were going to for sure work things out."

Before leaving for the coast for the weekend with T and their son, defendant did not contact the court to confirm T's representations regarding dismissal of the FAPA order. In defendant's view, she had no reason to disbelieve T, "because he wanted to be [with] the family. He wanted me *** back fully in his life," "especially seeing as he did buy me a wedding ring [that] Friday." In fact, the FAPA order had not been dismissed.

On Saturday, June 14, the day before Father's Day, defendant and T were stopped for a traffic violation while riding ATVs together in Winchester Bay. When the officer who made the stop checked with dispatch, he learned of the FAPA order, which was still in effect. When the officer so informed defendant, she was "upset" and protested, telling him that T had "gone to the court or to a government agency to have the restraining order dropped so they could spend more time as a family." T also protested, saying that he had "dropped it," but the officer replied that, without some confirmation that the order had been dismissed, he would have to take defendant into custody—which he did.

At the time of her arrest, defendant did not believe that the FAPA order was still in effect. A judgment dismissing the FAPA order was entered on June 19.[3]

On July 1, defendant was charged, by a district attorney's information, with contempt, ORS 33.015(2)(b), based on the violation of the FAPA order. The matter was tried to the court. In closing argument, defense counsel argued that, if the court credited defendant's account, it could not adjudicate her for contempt, because defendant's contemporaneous understanding—*viz.*, that "[s]he earnestly believed the restraining order had been dropped"—precluded the requisite determination that she had willfully violated the FAPA order. The prosecutor countered that, because defendant had insufficient information "to know that the restraining

---

[3] That dismissal was reflected in an OJIN printout, admitted as a trial exhibit. That printout indicates that the motion to dismiss the FAPA order was filed the same day.

order wasn't in place," "[t]he onus [was] on her" to "check, to call [the court], and to make sure that [it] wasn't."

The trial court, while explicitly crediting defendant's account, nevertheless adjudicated her for contempt:

> "[I]n listening to the testimony here today, you know, *it's very clear that, [defendant], that you had believed what someone else told you.* However, the order was issued by the Court, and only until the Court, the Judge, signs that order dismissing it is the restraining order actually dismissed. And you did not take the steps to protect yourself in that instance, and I find it very telling that [T]—even after you had been arrested on the 14th, that it took him five more days to actually go to the court and file a motion to dismiss. * * * But on the day that the deputy contacted you and you were well within 100 feet of [T], that restraining order had not been dismissed. It was still in effect. And based on that, I do find you in contempt of court. I do find that you willfully violated that order of the Court. You did not verify that the Court had signed a dismissal, and so I do find you in contempt."

(Emphasis added.)

On appeal, defendant substantially reiterates her position before the trial court, with the refinement, in the light of the trial court's finding as to defendant's contemporaneous good faith belief, that that finding precludes an adjudication of contempt. The state remonstrates that (1) that contention was unpreserved, because defense counsel expressed no objection after the trial court rendered its "speaking verdict"; and (2) in all events, there is no essential contradiction between the trial court's findings and a determination of a willful violation of the FAPA order.

The state's threshold nonpreservation response is unavailing. In this case, defense counsel contended in closing argument that, if the trial court found the facts in a certain fashion (*viz.*, if the court believed defendant's account), then it could not determine that her violation of the FAPA order was willful and, hence, contumacious. *See* 282 Or App at 53. That contention, necessarily, was not framed or phrased as a motion for judgment of acquittal, because, after all, the court was free to disbelieve defendant. Rather, it was

posited in functionally "matter-of-law" terms: If "A" (factually), then not "B" ("done willfully"/contempt). The prosecutor so understood, and engaged with, that fundamental contention, asserting that, regardless of defendant's subjective good faith belief, her failure to verify that the order had not been set aside rendered her noncompliance "willful." *Id.* Ultimately, the trial court, while explicitly finding the facts pertaining to defendant's contemporaneous understanding to be as she had represented, endorsed the state's legal position. Given that posture, a further objection by defense counsel, reiterating the legal premise of his closing argument, would not have served the prudential underpinnings of the preservation requirement.[4]

We proceed to the merits. As noted above, the state contends that, for several reasons, the trial court's statement crediting defendant's testimony as to her contemporaneous belief was not necessarily legally irreconcilable with a determination of willfulness. The state first contends that the trial court's statement did not constitute a finding that defendant believed that the FAPA order was no longer in effect. Specifically, the state asserts that,

> "when the trial court credited defendant's testimony by finding that she 'believed what someone had told' her, the court was referring to defendant's belief in her husband's statement about what he *intended* to do, not what he *had* done."

(Emphases in original.)

We respectfully reject that parsing. T's statements to defendant, which the court expressly found that she believed, were not that he intended to have the order set

---

[4] *See, e.g., State v. Wilson,* 240 Or App 475, 484-86, 248 P3d 10 (2011) (where defense counsel in closing argument in bench trial explicitly informed court that, if it found certain facts, then, as a matter of law, it could not convict the defendant as an accomplice and court subsequently found the specified facts but, nevertheless, convicted the defendant as an accomplice, appellate challenge was preserved notwithstanding that defense counsel did not raise further objection after trial court issued its letter opinion but before entry of judgment); *see also State v. Satterfield,* 274 Or App 756, 759-60, 362 P3d 728 (2015), *rev den,* 358 Or 794 (2016) (rejecting nonpreservation contention when defense counsel, during opening statement and closing argument in bench trial, "repeatedly articulated the applicable mental state required for conviction," but court, in finding the defendant guilty, expressly relied on erroneous mental state).

aside at some future date. Rather, what he told defendant was that he was "at the courthouse," "in the process of" having the order dismissed. That is, defendant believed T when he said he was presently engaged in having the FAPA order set aside.

In that light, and read in their entirety, the court's statements express a determination that defendant actually, and in good faith, believed that the order had been set aside, but, nevertheless, in the totality of the circumstances—and, as the prosecutor had argued—"[t]he onus [was] on [defendant] to make sure" that the order had, in fact, been dismissed. *See* 282 Or App at 54. Indeed, if the state's construction were correct, then the trial court's emphasis on defendant's failure to verify the order's dismissal would have been gratuitous. That is, if the trial court discredited defendant's testimony that she believed that the order was no longer in effect, then that alone would have established willfulness, without reference to any failure to verify the order's dismissal. We note, finally, that our construction of the court's finding is corroborated by the tenor of the court's observations in imposing sentence:

> "[I]t's unfortunate that you took the word of—I mean, at the time he was your husband still, although you had been separated. You took his word without verifying on your own, especially because of the situation that you both were in."

We turn, then, to the fundamental substantive dispute here: Did defendant's subjective, good faith contemporaneous understanding that the FAPA order was no longer in effect preclude a determination of willful noncompliance and, hence, an adjudication of contempt?

ORS 33.015(2) provides, in part:

> "'Contempt of court' means the following acts, done willfully:
>
> "*****
>
> "(b)   Disobedience of, resistance to or obstruction of the court's authority, process, orders or judgments."

There is no statutory definition of "willfully" for purposes of ORS 33.015(2). Indeed, that mental state element was not specified in the text of Oregon's contempt statutes, including

the antecedent *former* ORS 33.010(1)(e),[5] until the enactment of ORS 33.015 in 1991.[6] Before then, it was engrafted by judicial decisions. *See generally State ex rel Mikkelsen v. Hill*, 315 Or 452, 456-57, 847 P2d 402 (1993) (describing history); *cf. Couey and Couey*, 312 Or 302, 304, 821 P2d 1086 (1991) (noting, with reference to *former* ORS 33.010(1)(e), "[a]lthough the word 'willfully' does not appear on the face of the statute, this court long has recognized the requirement of 'willfulness'").

"Willful" and "willfully" are notoriously elusive terms, with their content varying qualitatively and dramatically in different contexts. *See generally* David Welkowitz, *Willfulness*™, 79 Alb L Rev 509 (2016) (addressing "chameleon-like" quality of term in different contexts generally, and trademark law specifically); *Id.* at 509 n 2 (noting Judge Learned Hand's deprecation of "willful," in context of Model Penal Code debate, as "a very dreadful word," "an awful word," and "one of the most troublesome words in a statute that I know of"). Thus, while general and legal dictionaries define the term as incorporating a component of intentionality,[7] Oregon law in some noncriminal contexts deems merely negligent conduct to have been "willful." *See, e.g.*, ORS 646.605(10) (defining "willful" for purposes of the Unfair Trade Practices Act: "A willful violation occurs when the person committing the violation knew *or should have known* that the conduct of the person was a violation." (Emphasis added.)).[8] It was because of that imprecision that, although

---

[5] *Former* ORS 33.010(1)(e) (1989), *repealed by* Or Laws 1991, ch 724, § 32, defined "contempts" as "[d]isobedience of any lawful judgment, decree, order or process of the court," without textual reference to a culpable mental state.

[6] Or Laws 1991, ch 724, § 1.

[7] *See, e.g., Webster's Third New Int'l Dictionary* 2617 (unabridged ed 2002) (defining "willful" as "done deliberately, not accidental or without purpose, intentional, self-determined"); *Black's Law Dictionary* 1593 (7th ed 1999) (defining "willful" as "[v]oluntary and intentional, but not necessarily malicious").

[8] *Accord State ex rel Redden v. Discount Fabrics, Inc.*, 289 Or 375, 385, 615 P2d 1034 (1980) (noting that, under Unfair Trade Practices Act, "willful" "requires no more than proof of ordinary negligence by a defendant in not knowing, when it should have known, that a representation made by [the defendant] was not true"); *cf. Wilson v. Smurfit Newsprint Corp.*, 197 Or App 648, 660-66, 107 P3d 61, *rev dismissed,* 339 Or 407 (2005) (canvassing precedents addressing meaning of "willful" for purposes of imposition of statutory penalties for failure to timely pay earned wages due upon termination of employment).

Oregon's criminal statutes had historically included a defi-
nition of "wilfully,"[9] that definition was deleted as part of the
1971 omnibus Criminal Code revisions.[10]

Notwithstanding that lack of textual definition, the
legislative history of Senate Bill (SB) 376 (1991), codified in
pertinent part as ORS 33.015(2), is conclusive as to the con-
tent of "willfully" in this context. SB 376 embodied a complete
overhaul of Oregon's contempt statutes. Tape Recording,
Senate Committee on Judiciary, SB 376, Feb 6, 1991, Tape
21, Side A (comment of Ingrid Swenson, Committee Counsel;
statements of William Linden, State Court Administrator,
and David Heynderickx, Legislative Counsel's Office). The
legislature's consideration of the measure—and, specifi-
cally, its inclusion of a "willful" mental state—occurred in
the immediate wake of our decision in *Couey and Couey*, 105
Or App 478, 805 P2d 716 (1991), which the Supreme Court
reversed in *Couey*, 312 Or 302.[11]

As noted, the text of the antecedent contempt stat-
ute did not include a reference to willfulness—or, for that
matter, to any culpable mental state—but judicial decisions
had incorporated and applied a willfulness requirement.
For example, in *Rust v. Pratt*, 157 Or 505, 510, 72 P2d 533
(1937), *appeal dismissed*, 303 US 621, 58 S Ct 648, 82 L Ed
1084 (1938), the Supreme Court quoted with approval the
trial court's statement that contempt "is the wilful disregard

---

[9] *Former* ORS 161.010(1), *repealed by* Or Laws 1971, ch 743, § 432, provided:

"'Wilfully,' when applied to the intent with which an act is done or omit-
ted, implies simply a purpose or willingness to commit the act or omission
referred to, and does not require any intent to violate law, to injure another
or to acquire any advantage."

[10] Under the 1971 Criminal Code revisions, there are four defined culpable
mental states: "intentionally," "knowingly," "recklessly," and with "criminal neg-
ligence." ORS 161.085(6) to (10). The commentary to the Criminal Code explains
the rationale for deleting other, previously defined, culpable mental states:

"ORS 161.010 expressly defines the following mental states: 'wilfully,'
'neglect,' 'corruptly,' 'malice,' 'wrongfully,' 'wantonly' and 'knowingly.' The
definitions are not clear, and have been difficult to interpret and apply. See
Hans A. Linde's article, 'Criminal Law—1959 Oregon Survey,' 39 Or L Rev
161."

Commentary to Criminal Law Revision Commission Proposed Oregon Criminal
Code, Final Draft and Report § 11, 10 (July 1970).

[11] Our opinion issued on February 6, 1991; the Supreme Court's opinion
issued on December 12, 1991.

of the authority of a court of justice." The next year, in *State ex rel Grover v. Grover*, 158 Or 635, 639, 77 P2d 430 (1938), the court quoted, with apparent approval, the United States Supreme Court's statement in *Felton v. United States*, 96 US 699, 702, 24 L Ed 875 (1877), that "[d]oing or omitting to do a thing knowingly and wilfully, implies not only a knowledge of the thing, *but a determination with a bad intent* to do it or to omit doing it." (Emphasis added.) The Oregon Supreme Court subsequently, repeatedly reiterated the *Grover/Felton* formulation. *See Couey*, 312 Or at 305 (citing cases).

In *Couey*, the defendant appealed from a judgment of criminal contempt imposed for failure to pay child support. 105 Or App at 480. The trial court, in adjudicating the defendant, observed, "I don't think you intentionally set out to cheat your ex-wife of the support." *Id.* at 481. On appeal, the defendant argued that, given that comment, he could not be deemed to have acted willfully. *Id.* We reversed and remanded, reasoning, under our understanding of the *Grover/Felton* standard, that "wilfully" and "with bad intent" were distinct and conjunctive requirements and that the trial court had failed to address the latter:

> "There was sufficient evidence to support the trial court's determination that defendant acted wilfully. The court, however, did not make a finding whether, in disobeying the support order, defendant acted with bad intent. The state contends that a finding of wilfullness automatically includes a finding of bad intent. However, because a finding of wilfullness alone does not necessarily show that a contemnor acted with bad intent, a separate finding of bad intent is required to support a contempt judgment."

*Id.*

The state petitioned for review, and the matter was in that posture as the 1991 Oregon Legislature considered whether, as originally proposed in SB 376, the statute should prescribe a "willful" culpable mental state[12] and, if so, the intended content of that term. Initially, some legislators expressed the view that the proposed "done willfully" language should be supplemented with "with bad intent"— and, indeed, the Senate Judiciary Committee initially,

---

[12] *See* SB 376 (1991), § 1.

provisionally, approved such an amendment. Tape Recording, Senate Committee on Judiciary, SB 376, Mar 25, 1991, Tape 72, Side A (comments of Sen Jim Bunn, Sen Jim Hill, and Sen Bob Shoemaker).

A week later—and critically to our consideration here—the committee revisited that matter at length. Tape Recording, Senate Committee on Judiciary, SB 376, Apr 1, 1991, Tape 83, Side A, Tape 84, Side A. At that time, the committee received testimony from Assistant Attorney General Jas. Adams, appellate counsel for the state in *Couey*. In an extended colloquy, Adams urged the committee not to include "bad intent" as a conjunctive requirement, contending that, because (contrary to our analysis in *Couey*) the concept of "bad intent" was incorporated into "willful," no separate finding of "bad intent" should be required. *Id.* at Tape 83, Side A (statement of Assistant Attorney General, Jas. Adams).

Committee members focused on the meaning of "willful"—that is, whether, if the previously approved amendment adding "bad intent" were rescinded, "done willfully" would sufficiently express the legislatively intended mental state. In doing so, they explicitly recognized that, regardless of the Supreme Court's ultimate decision in *Couey*, legislative intent would control judicial construction of "willfully" in SB 376, if enacted. *Id.* at Tape 84, Side A (*e.g.*, comment of Sen Shoemaker, observing that whatever the Supreme Court ultimately ruled in *Couey*, "from this point on, whatever we say, if the legislature agrees, it goes—not what the [Supreme Court] says, because this is statutory").

Proceeding from that premise, Senator Shoemaker posited that "willful" meant "[i]ntentional, and *with knowledge that what you are doing is forbidden.*" *Id.* (emphasis added). Adams agreed, stating that, while "bad intent" was "misleading," as implicating motive, contempt is "simply the deliberate flouting of a binding court order." *Id.* Senator Shoemaker then moved to retain "willfully" (without reference to "bad intent"), defined as: "intentionally and *with knowledge that it was forbidden conduct.*" *Id.* (emphasis added). The committee's chairperson, Senator Joyce Cohen, concurred, with the observation that the expressed definition

"would not go into the statute, but represented for clarifying legislative history." *Id.* (comment of Sen Cohen). With that understanding, the committee approved Senator Shoemaker's motion. *Id.* There appears to be no other legislative discussion bearing materially on the meaning of "done willfully" in SB 376.

In December 1991, long after the end of the legislative session, the Supreme Court issued its decision in *Couey*, reversing our holding. The court concluded that "willfully" and "with bad intent" were not distinct and conjunctive concepts for purposes of *former* ORS 33.010(1)(e). Rather,

> "[f]or purpose of *former* ORS 33.010(1)(e), a *prima facie* case of contempt is shown by proof of: (1) the existence of a valid court order; (2) the contemnor's knowledge of the order; and (3) voluntary noncompliance with the order. In this context, a finding of willful disobedience of a valid court order *is* a finding that the contemnor acted with bad intent and is sufficient to support a contempt judgment. We hold that a trial court need not make separate findings regarding willfulness and bad intent to support a judgment of contempt."

312 Or at 306 (emphasis in original). In so holding, the court made it clear that it was addressing the application of only the former, repealed, statute, and not the newly-enacted ORS 33.015(2)(b). *Id.* at 304 n 1; *see also Mikkelsen*, 315 Or at 454 n 1 (same). Thus, the Supreme Court in *Couey* had no occasion to address the meaning of "willfully" in ORS 33.015(2), as informed by its legislative history.

Over the years since *Couey*, in cases implicating ORS 33.015(2), we have repeatedly referred to *Couey*'s formulation, without reference to the legislative history of that statute. *See, e.g., State v. Crombie*, 267 Or App 705, 710, 341 P3d 841 (2014) (citing cases). Indeed, it appears that we have never addressed and applied that history.

Consistently with the dictates of *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009), we do so now. We readily appreciate that an expression of understanding within a single legislative committee is less than optimal legislative history. *Id.* at 172 n 9 (quoting with approval *Errand v. Cascade Steel Rolling Mills, Inc.*, 320 Or 509, 539 n 4, 888

P2d 544 (1995) (Graber, J., dissenting)).[13] Nevertheless, the understanding that "willfully" for purposes of ORS 33.015(2) meant, and means, "intentionally and with knowledge that [the act or omission] was forbidden conduct" was the product of substantial collegial consideration and was expressly memorialized as legislative history to provide definitional guidance. That contextually specific definition of an otherwise innately ambiguous term stands uncontradicted in the legislative record. Accordingly, it controls. *See State v. Kelly*, 229 Or App 461, 467, 211 P3d 932, *rev den*, 347 Or 446 (2009) ("[T]he more clearly the history speaks to the meaning of the disputed terms in issue, the more weight the history will be accorded.").

We note further, and finally, that that construction of "willfully" in ORS 33.015(2) is not inconsistent with our applications of the *Couey* formulation, which have imported an element of conscious disregard of a judicial order or judgment. *See, e.g., Crombie*, 267 Or App at 710 (noting that, to establish willful violation, state must prove that the "defendant knew about [a valid order] and *chose* not to comply with it"; affirming contempt adjudication where "the record establishe[d] that [the defendant] *consciously chose* to [engage in the alleged contumacious conduct] despite knowing about the existence of the no-contact order" (emphasis added)); *accord State v. Montgomery*, 216 Or App 221, 172 P3d 279 (2007) ("accidental" violation of restraining order is not "willful").

We return to the circumstances of this case. A defendant who acts based on a good faith belief that a judicial order has been dismissed cannot be deemed to have acted "with knowledge that it was forbidden conduct." *See* 282 Or App at 61-62. Such a defendant cannot be deemed to have acted "willfully" for purposes of ORS 33.015(2)(b). Consequently, the trial court's finding here as to defendant's contemporaneous, good faith belief contradicted an adjudication of contempt.

---

[13] In her dissent in *Errand*, 320 Or at 539 n 4, then-Justice Graber observed:

"[A]n examination of legislative history is most fraught with the potential for misconstruction, misattribution of the beliefs of a single legislator or witness to the body as a whole, or abuse in the form of 'padding the record' when the views of only a small number of persons on a narrow question can be found."

There are no unresolved factual issues on this record whose determination in the event of remand could establish an alternative basis for adjudication of contempt as charged. *See State v. Barboe*, 253 Or App 367, 378, 290 P3d 833 (2012), *rev den*, 353 Or 714 (2013) ("We have consistently held that * * * where factual issues pertinent to a material element of the crime remain unresolved, the proper disposition is to reverse and remand for a new trial." (Internal quotations omitted.)).[14] Accordingly, we reverse the adjudication of contempt.

Reversed.

---

[14] *See also Satterfield,* 274 Or App at 762-63 (reversing and remanding in that posture); *Wilson,* 240 Or App at 489 (same).