Submitted November 15, 2016, affirmed August 23, petition for review denied November 28, 2017 (362 Or 208)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

DANIEL WAYNE BELEKE,
*Defendant-Appellant.*

Lane County Circuit Court
15CN01344, 15CR18564;
A160038 (Control), A160039

403 P3d 481

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Brett J. Allin, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Shannon T. Reel, Assistant Attorney General, filed the brief for respondent.

Before DeVore, Presiding Judge, and Garrett, Judge, and James, Judge.*

---

* James, J., *vice* Duncan, J. pro tempore.

**GARRETT, J.**

Defendant appeals a judgment finding him in contempt of court and a judgment revoking his probation on his convictions for multiple domestic violence offenses, both of which the trial court entered after defendant violated a restraining order by entering the victim's apartment. Defendant acknowledges that he knew that the restraining order existed and that it prohibited him from being in the apartment. He argues, however, that both the contempt charge and the probation revocation required proof that defendant acted with "bad intent," and that because no such showing was made—that is, defendant believed that a probation officer gave him permission to be in the apartment—the trial court erred in finding him in contempt and revoking his probation. As to the revocation of probation, we reject defendant's arguments without discussion. As to contempt, for the reasons explained below, we reject defendant's arguments on appeal. We therefore affirm.

The facts are not in dispute. On May 8, 2015, as a result of a domestic-violence incident one day earlier, a restraining order was entered that prohibited defendant from contacting the victim or coming within 200 feet of her or her residence, and further required defendant to "move from and not return to" the apartment that he and the victim shared in Springfield. Three weeks later, on May 29, defendant pleaded guilty to and was convicted of multiple domestic-violence offenses. The parties stipulated to a downward-departure sentence of 36 months' probation. At the sentencing hearing, the state noted the existing restraining order, which, by its terms, was to remain in place for one year. The trial court then imposed several special conditions of probation, including that defendant could not have contact with the victim or knowingly be within 1,000 feet of her residence without prior written permission from his probation officer. The court also, however, specifically instructed defendant that he had to comply with any existing protective orders against him.

On June 2, defendant met with an intake officer, Shreve, at the probation department for approximately five minutes. Shreve was not defendant's probation officer and

did not have any information about defendant's case other than that it was a domestic-violence case. Defendant did not inform Shreve that the May 8 restraining order was in place. Shreve asked defendant what his address was, and defendant gave the address of the Springfield apartment. Shreve asked if the victim lived there. Defendant replied, "Well, no, I live there. That's my house." Shreve then stated: "Well, you have to stay at The Mission, that's your only approved residence, unless that victim doesn't live there." At the conclusion of their meeting, defendant and Shreve signed an "Action Plan" that stated, in part:

"No contact with victim.

"Stay at Mission or [Springfield apartment] if victim is not at [Springfield apartment]. I will stay at that residence."

Later that day, the victim's neighbor called police after seeing defendant at the Springfield apartment. Responding officers found defendant inside the apartment; he appeared to have broken the door to get in. Defendant told officers that he knew an existing restraining order prohibited him from being at the apartment, but asserted that the "Action Plan" allowed him to be there if the victim was not.

The state charged defendant with contempt for violating the restraining order and sought revocation of probation. Before the trial court, defendant did not challenge any of the evidence against him, but argued that the "Action Plan" constituted permission for defendant to be at the Springfield apartment if the victim was not there. He thus argued that he had acted without bad intent, that any violation of probation was not "willful," and that the state had also failed to prove "willful" conduct as required for the contempt charge. The trial court found him in contempt and revoked his probation. Defendant renews his arguments on appeal.

We review to determine "whether the record contains evidence from which a rational trier of fact, drawing all reasonable inferences in the light most favorable to the state, could find all elements of contempt beyond a reasonable doubt." *State v. Graham*, 251 Or App 217, 218, 284 P3d 515 (2012). The question is not whether we believe that the

defendant was in contempt, but whether the evidence is sufficient for the trier of fact to so find. *Id.* at 219.

ORS 33.015(2) provides, in relevant part:

"'Contempt of court' means the following acts, done willfully:

"* * * * *

"(b)   Disobedience of, resistance to or obstruction of the court's authority, process, orders or judgments."

To prove contempt, the state must establish the existence of a valid court order, the defendant's knowledge of that order, and the defendant's willful noncompliance with that order. *Frady v. Frady*, 185 Or App 245, 248, 58 P3d 849 (2002) (citing *Couey and Couey*, 312 Or 302, 306, 821 P2d 1086 (1991)). Although ORS 33.015 does not define "willfully," we recently analyzed that question in *State v. Nicholson*, 282 Or App 51, 383 P3d 977 (2016). In *Nicholson*, we concluded on the basis of unambiguous legislative history that, for purposes of ORS 33.015(2), the legislature intended "willfully" to mean "intentionally and with knowledge that [the act or omission] was forbidden conduct." *Id.* at 62 (brackets in original). We concluded in that case that the defendant, whom the trial court found had acted contrary to an existing judicial order based on her good faith belief that the order had been dismissed, could not be deemed to have acted "with knowledge that it was forbidden conduct," and we therefore reversed the contempt adjudication. *Id.* at 62-63 (internal quotation marks omitted).

Here, defendant relies on *Nicholson* to argue that the state failed to prove willfulness because defendant did not believe, at the time that he entered the Springfield apartment, that doing so was forbidden conduct. Defendant argues that "the various court orders and probation conditions and directives that defendant was under were confusing and inconsistent, and led defendant into a trap despite his good faith effort to comply." To that end, defendant argues that, although the restraining order contained a blanket prohibition on his entering the Springfield apartment, defendant reasonably understood that prohibition to

have been superseded by (1) the probation condition that prohibited him from entering the apartment without prior written permission from his probation officer, and (2) the "Action Plan" that allowed defendant to reside at the apartment if the victim was not there.

The state responds that a rational trier of fact, drawing all reasonable inferences in the light most favorable to the state, could find beyond a reasonable doubt that defendant knew that he was forbidden to enter the Springfield apartment. We agree with the state.

Defendant's reliance on *Nicholson* is unavailing. In that case, the question was not one of sufficiency of the evidence and there was no doubt that the defendant had a good faith belief that the previous restraining order had been dismissed; the trial court had made an express finding to that effect. The only issue on appeal was whether that finding precluded a determination of willfulness as a matter of law. 282 Or App at 56. Here, by contrast, although defendant argues that the probation conditions were imposed after the restraining order was issued and thus could have been reasonably understood by defendant to "modify" that order, that inference is not compelled by the evidence, which includes the trial court's admonitions that defendant was *required to comply* with any existing restraining order against him. Thus, a rational trier of fact could infer that defendant understood at the time of the sentencing hearing that he remained bound by the restraining order—because he was expressly told so.

Defendant's reliance on the "Action Plan" as constituting "permission" to enter the apartment is also unavailing. The record shows that the intake officer, Shreve, was not defendant's "probation officer" authorized to give such permission, that Shreve was unfamiliar with the details of defendant's case, that defendant failed during that brief intake interview to disclose the existence of the restraining order, and that defendant responded untruthfully when Shreve asked whether the victim lived at the apartment. From that evidence, a rational trier of fact could infer that defendant understood that he remained subject to the

restraining order or, in the alternative, that he had not obtained genuine "permission" to enter the apartment.

Accordingly, the trial court did not err in finding defendant in contempt.

Affirmed.