JAMES, J.
*954 *574 Appellant appeals an order denying its motion for an order to show cause why respondents should not be found in contempt for violating a protective order and nondisclosure agreement created in an earlier litigation. ORS 33.015(2) ; ORS 33.055. Appellant argues that its motion and supporting affidavits sufficiently established a prima facie case of remedial contempt and, thus, the trial court erred when it denied the motion. Respondents contend that the trial court correctly denied the motion because the record did not sufficiently establish that respondents willfully violated the underlying protective order and nondisclosure agreement. We agree with appellant and, accordingly, reverse and remand.
The question on appeal is whether appellant's show of proof was sufficient to establish a prima facie case of contempt. In a contempt proceeding, "[w]e review to determine whether the record contains evidence from which a rational trier of fact, drawing all reasonable inferences in the light most favorable to the [movant], could find all elements of contempt." State v. Beleke , 287 Or. App. 417, 420, 403 P.3d 481, rev. den. , 362 Or. 208, 407 P.3d 814 (2017) (internal quotation marks omitted). Therefore, "[t]he question is not whether we believe that the [respondents were] in contempt, but whether the evidence is sufficient for the trier of fact to so find." Id. at 420-21, 403 P.3d 481. As such, we state the facts in the light most favorable to the movant. See Handy v. Lane County , 360 Or. 605, 608 n. 1, 385 P.3d 1016 (2016) (stating the facts in the light most favorable to the plaintiff where the question on review was whether the plaintiff's evidence was sufficient to establish a prima facie case).
Respondents are a group of lawyers and law firms that represented Elizabeth Lofts Condominiums Owners' Association in a products liability action against appellant, Victaulic Company. As part of that litigation ("Elizabeth Lofts "), the parties agreed to, and the court approved, a protective order and nondisclosure agreement to keep closely held trade secrets, patents, and testing material confidential as it was shared between appellant and respondents during discovery. The protective order directed that "qualified persons"-including experts used by the parties-were subject *575 to the protective order and nondisclosure agreement. As part of the order, respondents were to provide a copy of the protective order and "execute" a nondisclosure agreement with their experts before confidential documents and information were received. Ultimately, appellant and the condominium association settled the Elizabeth Lofts case and the court dismissed the matter. However, the stipulated protective order and nondisclosure agreement was still binding.
The events giving rise to this contempt proceeding came years later. During a deposition in a different products liability case, an expert that respondents had retained in the Elizabeth Lofts action disclosed appellant's confidential documents and information. The documents and information disclosed by that expert were Bates stamped with "Confidential" and "VIC_LIZ." One of the attorneys in that later litigation alerted appellant's counsel to the disclosure.
Appellant's counsel reviewed the disclosed documents and information and determined that the material was from the Elizabeth Lofts case and was protected by the protective order and nondisclosure agreement. Soon after the disclosure, appellant's counsel and respondents exchanged numerous letters and emails in an attempt to claw back and resolve the expert's disclosure of Victaulic's confidential documents and information. Appellant's counsel repeatedly requested a copy of the nondisclosure agreement executed by the expert retained by respondents. No executed nondisclosure agreement with the expert in the Elizabeth Lofts case was ever produced by any respondent in response to appellant's requests. Rather, one of the respondents, the law firm Ball Janik LLP, produced an old email from a former Ball Janik attorney to the expert. In the email, the attorney wrote:
"This is just a reminder that the documents you reviewed yesterday are confidential *955 and subject to a protective order. A copy of the protective order is attached for your file. Victaulic is taking this protective order very seriously and has been adamant regarding the confidentiality of the documents they produced.
"Please confirm you have reviewed it and agree to be bound by it. Yesterday you indicated you understood the *576 documents were confidential and not to be discussed, or disclosed with anyone outside the Elizabeth Lofts litigation."
That email was the only evidence Ball Janik produced for appellant regarding the expert, the protective order and nondisclosure agreement, and the Elizabeth Lofts case. Other respondents, lawyer Michelle McClure and the law firm Landye Bennett Blumstein LLP, produced nondisclosure agreements signed by that expert in other products liability cases between Victaulic and different plaintiffs. Landye Bennett Blumstein denied releasing any confidential documents to that expert in the Elizabeth Lofts case.
Appellant subsequently moved for an order to show cause regarding contempt for breach of the protective order and nondisclosure agreement: Appellant requested respondents-Phillip Joseph, Daniel Webert, and Ball Janik; Michelle McClure and Landye Bennett Blumstein-to appear and show cause as to violations of the protective order that occurred when their expert produced confidential documents to parties during a deposition in a separate case.
Following appellant's amended motion, the trial court issued a letter to the parties. The trial court wrote, in relevant part:
" * * * [D]espite this Court's routine consideration of such motions ex parte , I have not yet considered [appellant's] amended motion on the merits out of caution and concern for the interests of those individuals and persons against whom Victaulic seeks the Order to Show Cause.
" * * * * *
"If I eventually sign an Order to Show Cause, you should be assured that it will only be to 'tee-up' the allegations of contempt for a hearing or trial at some future date. An Order to Show Cause will not reflect any determination that any person or firm has actually engaged in conduct that constitutes contempt.
" * * * * *
"I am requiring [appellant] to serve her pending motion in advance of my consideration of it so that any of you who may have an interest may file whatever you think appropriate in response to the motion, even though the Court usually entertains such matters ex parte ."
*577 In accordance with the above letter, respondents filed oppositions to the amended motion for an order to show cause and submitted affidavits for the trial court's consideration.
About a month later, the trial court issued an order denying appellant's motion. The order provided, in part:
"Although such motions are usually considered by the Court ex parte , based solely upon the submissions of the moving party, in this matter the Court directed the [appellant], the moving party, to serve the individuals and law firms whom the [appellant] seeks to be held in contempt.
"The Court has considered the submissions of [appellant] in support of [appellant's] motion. The Court has also had the benefit of written submissions from all the persons and law firms whom the [appellant] seeks to be held in contempt.
"Based upon the foregoing, IT IS HEREBY ORDERED that [appellant's] Amended Motion for Order to Show Cause Re: Contempt for Breach of Protective Order Requiring Non-Disclosure Agreement is hereby denied, because on the merits of [appellant's] motion, [appellant] has not established a prima facie case for remedial contempt against the persons and law firms against whom [appellant] seeks the Order to Show Cause."
Thus, even though the trial court received memoranda and affidavits from both sides, and the conduct of that review might indicate a disposition on the merits, we take the trial court at its word that it disposed of the matter based on a failure to present a prima facie case. On appeal, appellant argues that the trial court erred because appellant's motion for an order to show cause sufficiently *956 established a prima facie case. Respondents contend that the trial court correctly denied appellant's motion because the record did not sufficiently establish that respondents willfully violated the protective order and nondisclosure agreement.
ORS 33.015(2) statutorily defines contempt and states, in relevant part:
" 'Contempt of court' means the following acts, done willfully:
" * * * * *
"(b) Disobedience of, resistance to or obstruction of the court's authority, process, orders or judgments."
*578 ORS 33.055 provides the procedure relevant here for imposing remedial sanctions for contempt:
"(1) Except as otherwise provided in ORS 161.685, proceedings to impose remedial sanctions for contempt shall be conducted as provided in this section.
"(2) The following persons may initiate the proceeding or, with leave of the court, participate in the proceeding, by filing a motion requesting that defendant be ordered to appear:
"(a) A party aggrieved by an alleged contempt of court.
" * * * * *
"(3) A motion to initiate a proceeding under this section shall be filed in the proceeding to which the contempt is related, if there is a related proceeding.
"(4) The person initiating a proceeding under this section shall file supporting documentation or affidavits sufficient to give defendant notice of the specific acts alleged to constitute contempt.
"(5)(a) The court may issue an order directing the defendant to appear. Except as otherwise provided in paragraph (b) of this subsection, the defendant shall be personally served with the order to appear in the manner provided in ORCP 7 and 9. The court may order service by a method other than personal service or issue an arrest warrant if, based upon motion and supporting affidavit, the court finds that the defendant cannot be personally served.
" * * * * *
"(6) The court may impose a remedial sanction only after affording the defendant opportunity for a hearing tried to the court. The defendant may waive the opportunity for a hearing by stipulated order filed with the court."
For purposes of ORS 33.015(2) and a trial court's subsequent exercise of discretion as to whether to hold a hearing under ORS 33.055(6), a movant must first establish a prima facie case of contempt through its motion and affidavits. A prima facie case of contempt is shown by (1) proof of an existing, valid court order, (2) the contemnor's knowledge of that order, and (3) the contemnor's willful noncompliance with that order.
*579 State v. Nicholson , 282 Or. App. 51, 61, 383 P.3d 977 (2016). Yet, even when an initial prima facie case of contempt is made, it is still within the discretion of the trial court as to whether a hearing or resulting sanctions are appropriate. ORS 33.055(6) (using "may" and not shall with regard to the court's actions).
Here, the parties agree that there was an existing, valid order-the stipulated protective order and nondisclosure agreement created in the Elizabeth Lofts action- and that respondents had knowledge of that order. Put another way, there is no dispute that elements one and two of a prima facie showing of contempt were sufficiently established by appellant. Thus, the parties' arguments focus on whether the third element of a prima facie showing of contempt-respondents' willful noncompliance-was sufficiently established by appellant.
The meaning and application of willful noncompliance in the case law is borne of the statute, as ORS 33.015 requires acts be "done willfully"; though "willfully" is not specifically defined in ORS 33.015. We determined in Nicholson that the legislature intended the term to mean "intentionally and with knowledge that [the act or omission] was forbidden conduct." 282 Or. App. at 62, 383 P.3d 977 ("Nevertheless, the understanding that 'willfully' for purposes of ORS 33.015(2) meant, and means, 'intentionally and with knowledge that [the act or omission] was forbidden conduct' was the product of substantial collegial consideration and was expressly memorialized *957 as legislative history to provide definitional guidance." (Brackets in original.) ). Thus, the movant must establish that the contemnor's willful noncompliance was done intentionally and with knowledge that the breach or violation was forbidden conduct as outlined in the valid order. In light of this, we have previously held that an accidental violation of an order is not willful by meaning of the statute and a contemnor "who acts based on a good faith belief that a judicial order has been dismissed cannot be deemed to have acted 'with knowledge that it was forbidden conduct.' " Id. ; see also State v. Crombie , 267 Or. App. 705, 710, 341 P.3d 841 (2014) ("[I]n order to prove a willful violation of the order, the state need show only the existence of a valid order and that defendant knew about it and chose not *580 to comply with it."); State v. Montgomery , 216 Or. App. 221, 225, 172 P.3d 279 (2007) ("We conclude that the trial court erred in ruling that it is not necessary to determine whether defendant's violation of a prior court order was accidental in order to determine whether that violation was 'willful' within the meaning of the contempt statute.").
A trier of fact can infer a willful mental state from facts showing a knowing violation. The Oregon courts have often stated that intent is rarely susceptible to proof by direct evidence. Earlier this year, in State v. Davis , 290 Or. App. 244, 260, 414 P.3d 887 (2018), we addressed inferences about mental state:
"A defendant's subjective intent 'may be inferred from the evidence and circumstances surrounding the defendant's actions,' and such an inference is reasonable 'if there is a logical connection between the surrounding activity and the defendant's [purported] state of mind.' State v. Branch , 208 Or. App. 286, 289, 144 P.3d 1010 (2006) ; see also State v. Rose , 311 Or. 274, 282, 810 P.2d 839 (1991) ('Evidence of a defendant's intent is rarely, if ever, proven by direct evidence. Intent is an operation of the mind, and it is seldom susceptible of direct proof.')."
In this case, appellant alleges that respondents' failure to obtain the expert's signature on a nondisclosure agreement was a straightforward violation of the protective order because respondents were required to obtain a signature on a nondisclosure agreement prior to disclosing confidential documents to qualified persons, such as experts. Appellant stated that "[i]t is undisputed that [obtaining a signature] was not done." Moreover, as appellant alleged in its motion:
"[T]here is no question that Mr. Webert, Mr. Joseph, and Ball Janik had knowledge of the Stipulated Protective Order and the requirement of executing a Non-Disclosure Agreement when Victaulic's confidential documents were provided to [the expert]. By signing the formally amended Stipulated Protective Order and Non-Disclosure Agreement, Ms. McClure and Landye Bennett also agreed to be responsible for the use of Victaulic's confidential documents."
*581 Appellant, in its motion and affidavits, provides evidence showing that respondents knew that they needed a signed nondisclosure agreement, but that they failed to obtain the signature of the Elizabeth Lofts expert, and there is evidence that respondents disclosed confidential documents without an executed nondisclosure agreement. Accordingly, when viewed in the light most favorable to appellant, a trier of fact could infer that respondents made the disclosure willfully.
We emphasize that the question of whether respondents did, in fact, act willfully is not before us. The only issue before us is whether the element of willful noncompliance was sufficiently established in satisfaction of a prima facie showing of contempt. Based upon this record, a factual question as to the willfulness element has been presented. Ultimately, it is up to the trial court to decide, on the merits, whether this disclosure was merely an accident or whether it amounted to a knowing disregard of the terms and restrictions of the protective order and nondisclosure agreement. And even if it so concludes, it is for the trial court's discretion whether remedial sanctions, if any, are appropriate, and if no sanctions are to be imposed, whether any hearing on this matter is warranted. ORS 33.055(6).
Reversed and remanded.