Submitted June 20; affirmed December 18, 2019; petition for review denied May 21, 2020 (366 Or 493)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## ALI JASIM MOHAMMED,
*Defendant-Appellant.*

Washington County Circuit Court
17CN05826; A166566

456 P3d 661

Defendant appeals a judgment of contempt, ORS 33.015(2)(b). Defendant was found in contempt for violating a Family Abuse Prevention Act (FAPA) restraining order, ORS 107.718, that had prohibited defendant from having contact with G. Defendant argues that the trial court erred by finding that he "willfully" violated the restraining order, as required for a finding of contempt under ORS 33.015 (2)(b), because he believed that the order had been dismissed. *Held*: A rational trier of fact, drawing all reasonable inferences in the light most favorable to the state, could have found all of the elements of contempt beyond a reasonable doubt. The trial court's findings were supported by evidence in the record, and the record supported a reasonable inference that defendant did not have a contemporaneous, good faith belief that the FAPA order had been dismissed. Thus, the trial court did not err when it found that defendant willfully violated the restraining order and found defendant in contempt.

Affirmed.

Ramon A. Pagan, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Sarah Laidlaw, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Julia Glick, Assistant Attorney General, filed the brief for respondent.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Shorr, Judge.

TOOKEY, J.

Affirmed.

**TOOKEY, J.**

Defendant appeals a judgment of contempt, ORS 33.015(2)(b).[1] Defendant was found in contempt for violating a Family Abuse Prevention Act (FAPA) restraining order, ORS 107.718, that had prohibited defendant from having contact with G, the mother of his child. Defendant argues that the trial court erred by finding that he "willfully" violated the restraining order, as required for a finding of contempt under ORS 33.015(2)(b), because he believed that the order had been dismissed. Our review of the record leads us to conclude that the record contains sufficient evidence from which the trial court could have found that defendant knew that the order had not been dismissed, and, thus, the violation of the order was "done willfully." ORS 33.015(2). Accordingly, we affirm.

We "review the denial of a motion for judgment of acquittal on punitive contempt to determine whether the record contains evidence from which a rational trier of fact, drawing all reasonable inferences in the light most favorable to the state, could find all elements of contempt beyond a reasonable doubt." *State v. Graham*, 251 Or App 217, 218, 284 P3d 515 (2012).[2] In accordance with our standard of review, "[w]e recite the material facts in the light most favorable to the state, consistently with the trial court's express findings." *State v. Nicholson*, 282 Or App 51, 52, 383 P3d 977 (2016).

In March 2017, G, the mother of defendant's child, obtained a FAPA restraining order against defendant that prohibited him from having contact with G. In July 2017,

---

[1] ORS 33.015(2) provides, in part:

"'Contempt of court' means the following acts, done willfully:

"* * * * *

"(b)  Disobedience of, resistance to or obstruction of the court's authority, process, orders or judgments."

[2] At defendant's bench trial, although defendant did not formally move for a judgment of acquittal, in his closing arguments, defendant argued that there was legally insufficient evidence that his conduct was a "willful" violation of the FAPA order. *See State v. Gonzalez*, 188 Or App 430, 431, 71 P3d 573 (2003) (explaining that, in a bench trial, a defendant's closing argument that the state had not adduced legally sufficient evidence to establish the required culpable mental state "is the equivalent of a motion for judgment of acquittal").

G began having financial difficulties and could not afford rent or food. The only way defendant would agree to help G economically was if G would allow defendant to move back in with G and their daughter, even though the FAPA order was still in place. Defendant began living with G in July. According to G, defendant knew that the restraining order had not been dismissed, because G and defendant "always talk about this restraining order," and G had never told defendant that the order had been dismissed.

On November 15, 2017, G called the police after an argument with defendant and told defendant that he needed to leave the home because of the restraining order. Deputy Evans responded to G's call. G informed Evans that defendant was violating the FAPA order because defendant "was at her house and refused to leave." Defendant stated to Evans that G had told him that the restraining order had been dismissed. Evans explained that a valid FAPA order was still in place, and Evans arrested defendant for violating that order.

At trial, G testified that defendant knew that the FAPA order was in place, because the order was a frequent topic of discussion and that G never had told defendant that the order had been dismissed.

For his part, defendant testified that he believed the FAPA order had been dismissed, because a previous charge for harassing G had been dismissed, and because G had led defendant to believe the order had been dismissed. Defendant acknowledged, however, that nobody from the court system had ever told defendant that he could resume contact with G after the harassment charge had been dismissed, or that the order had been dismissed along with the harassment charge. Defendant also acknowledged that, when G called the police, G told defendant, "I'm not going to remove the restraining order off of you," and that defendant needed to leave because "the police are coming."

The state argued that, if the court found G to be a credible witness, it should find that defendant willfully violated the FAPA order. Defendant argued that the evidence was legally insufficient to find that he had willfully violated the order, because G was not a credible witness, and

because defendant honestly believed that the order had been dismissed.

The trial court expressly found that G was credible and that she had never told defendant that the FAPA order had been dismissed. The trial court further found that, even if G had told defendant the order had been dismissed at some point, any good faith belief by defendant that the order had been dismissed "had completely been washed away" once G told defendant that she was "not going to remove the restraining order" and that she was calling the police to report defendant's violation of the order. Accordingly, the trial court found defendant in contempt for his "willful" violation of the FAPA order.

On appeal, defendant argues that the trial court erred when it entered a judgment of contempt because "his conduct did not establish a willful violation" of the FAPA order. Defendant contends that the outcome of this case is controlled by *Nicholson*, 282 Or App 51, because the evidence indicates that G "represented that the restraining order was no longer in effect," and, thus, defendant believed that the restraining order had been dismissed. The state responds that "sufficient evidence supported the [trial court's finding that] defendant's violation of the restraining order was knowing and willful and constituted contempt of court." We agree with the state.

"To prove contempt, the state must establish the existence of a valid court order, the defendant's knowledge of that order, and the defendant's willful noncompliance with that order." *State v. Beleke*, 287 Or App 417, 421, 403 P3d 481, *rev den*, 362 Or 208 (2017). As we have discussed, "'willfully' for the purposes of ORS 33.015(2) meant, and means, intentionally and with knowledge that the act or omission was forbidden conduct." *Nicholson*, 282 Or App at 62 (internal quotation marks and brackets omitted). But a "defendant who acts based on a good faith belief that a judicial order has been dismissed cannot be deemed to have acted with knowledge that it was forbidden conduct." *Id*. (internal quotation marks omitted).

Defendant's reliance on *Nicholson* as controlling precedent under these circumstances is misplaced. In that

case, there was no factual issue concerning the defendant's "contemporaneous, good faith belief" that the FAPA order had been dismissed. *Id*. at 62. Indeed, the trial court credited the defendant's testimony that her estranged husband had told the defendant that he was at the courthouse getting the FAPA order dismissed and found that the defendant "actually, and in good faith, believed that the order had been set aside." *Id*. at 55-56. Nevertheless, the trial court found the defendant in contempt. *Id*. at 54. On appeal, in light of the trial court's express finding that the defendant had a "contemporaneous, good faith belief" that the FAPA order had been dismissed, we concluded that the trial court erred in finding the defendant in contempt, because "[a] defendant who acts based on a good faith belief that a judicial order has been dismissed cannot be deemed to have acted with knowledge that it was forbidden conduct," *i.e.*, "'willfully' for purposes of ORS 33.015(2)(b)." *Id*. at 62 (internal quotation marks omitted).

Here, by contrast, the trial court expressly found that G, not defendant, was credible in her testimony, and that G had never told defendant that the FAPA order had been dismissed. *See id*. at 56 (observing that "if the trial court discredited defendant's testimony that she believed that the order was no longer in effect, then that alone would have established willfulness"). Furthermore, defendant's own testimony was that, when G told defendant that she was going to call the police, G told defendant that the FAPA order was still in place and that he needed to leave. Defendant chose to stay and was arrested for violating the order. From that evidence, a rational trier of fact could find that defendant knew that he remained subject to the FAPA order and chose to willfully violate the order.

In sum, a rational trier of fact, drawing all reasonable inferences in the light most favorable to the state, could find all of the elements of contempt beyond a reasonable doubt. The trial court's findings are supported by evidence in the record, and the record supports a reasonable inference that defendant did not have a "contemporaneous, good faith belief" that the FAPA order had been dismissed. *Id*. at 62. Thus, the trial court did not err when it found that

defendant willfully violated the restraining order and found
defendant in contempt.

Affirmed.