124 September 18, 2024 No. 662

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

ANTHONY SAM WHITE,
*Plaintiff-Respondent,*

*v.*

Erin REYES,
Superintendent,
Two Rivers Correctional Institution,
*Defendant-Appellant.*

Umatilla County Circuit Court
18CV38683; A175360

Robert W. Collins, Jr. Judge.

Argued and submitted September 1, 2022.

Joanna Hershey, Assistant Attorney General, argued the cause for appellant. Also on the briefs were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General. On the reply brief was Robert M. Wilsey, Assistant Attorney General.

Margaret V. Huntington argued the cause for respondent. Also on the brief was O'Connor Weber LLC.

Before Ortega, Presiding Judge, and Powers, Judge, and Hellman, Judge.

HELLMAN, J.

Affirmed.

Powers, J., dissenting.

**HELLMAN, J.**

Defendant, the superintendent of the institution where plaintiff was incarcerated, appeals a supplemental judgment that held defendant in contempt of court and ordered plaintiff's release. On appeal, defendant raises two assignments of error.[1] Specifically, he argues that the habeas court erred by finding him in contempt and by ordering plaintiff's release.[2] Although defendant contends that the court should have terminated jurisdiction after he complied with the general judgment and its subsequent orders, the evidence supports the court's determinations that defendant willfully violated the general judgment and that his deliberate indifference continued through the pendency of the case. Therefore, we conclude that the court did not err and affirm the supplemental judgment.

## I.  FACTS

We state the facts in the light most favorable to plaintiff, the party who moved for the contempt finding. *Elizabeth Lofts Condo Owners' v. Victaulic Co.*, 293 Or App 572, 574, 428 P3d 952 (2018). In 2014, plaintiff entered Department of Corrections (DOC) custody after committing a robbery and sustaining a gunshot wound that rendered him paraplegic. In 2018, plaintiff filed a petition for writ of habeas corpus and alleged that defendant was deliberately indifferent to his medical condition and refused to provide him medically necessary care. Plaintiff sought injunctive relief, including "a higher pain medication management plan" and evaluations by a physiatrist and pain management specialist.[3]

---

[1] Defendant raised a third assignment of error contending that the court erred by requiring him to provide plaintiff with post-release services. We agree with defendant that his argument has been rendered moot because he provided plaintiff those services upon release.

[2] Because defendant notes that "the superintendent at the time of the proceedings was Tyler Blewett" and refers to defendant as "he" in the briefs, we do so here.

[3] In June 2019, following the trial, plaintiff sought a temporary order concerning his medication. Plaintiff asked the court to "order his transfer to a prison in Marion County as part of any relief received" and stated that he "[had] no other alternative remedy available than the pending habeas action." In its Post Trial Rebuttal memorandum, defendant did not address plaintiff's request for a transfer and maintained that he was "providing constitutionally appropriate medical care for all of Plaintiff's medical needs alleged in his Replication," including plaintiff's chronic pain.

In his trial memorandum, plaintiff requested "immediate release and/or injunctive release."

In July 2019, the habeas court entered a general judgment and concluded that defendant had violated the Eighth Amendment to the United States Constitution because he had "failed to provide [plaintiff] adequate medical treatment." The court made extensive findings of fact. Specifically, the court found that defendant had approved plaintiff to see a physiatrist in 2014 but failed to provide the appointment. Even though plaintiff's medical records referenced "ongoing physical therapy," defendant had provided plaintiff only one physical therapy session in 2015; subsequent sessions were "exercise sessions supervised by an untrained individual[.]" As a result, the court found that "approved and recommended medical interventions have been denied to [plaintiff]" and caused plaintiff "to suffer extreme pain and discomfort and lose the opportunity for possible relief over a period of four-and-a-half years, thus impairing the quality of his life and opportunities for improvement."

The court also made findings about defendant's management of plaintiff's medications. For example, the court found that defendant had discontinued one of plaintiff's pain medications "in favor of *** a pain medication that is typically weaker and less effective" and discontinued another medication that had known withdrawal symptoms without consulting plaintiff. Thus, the court concluded that defendant was "deliberately indifferent in diagnosing and treating plaintiff's medical needs."

In the section titled "judgment," the habeas court issued the following orders.

"1.  ODOC is to provide consultation and evaluation with a board certified Physiatrist (spinal cord injury medical specialist) in a reasonable amount of time for diagnostic analysis and full medical review of Plaintiff's condition and possible medical interventions to improve pain, muscle spasm, and overall levels of Plaintiff's physical and mental functional abilities.

"2.  ODOC is directed to provide Physical Therapy with a licensed Physical Therapist to commence within a

reasonable period of time and to continue until no longer indicated in the opinion of the treating Physical Therapist.

"3.    ODOC is directed to restore the drugs [G]abapentin and Zanaflex as previously prescribed and utilized by Petitioner and to make no further changes to Petitioner's medications until examination and review of drug regimen by a qualified Physiatrist and as recommended and prescribed by a board certified Physiatrist."

The court retained jurisdiction to ensure that defendant complied with the judgment, and defendant did not appeal that judgment.

About three weeks after the habeas court entered the judgment, plaintiff filed a motion for an emergency hearing because defendant had failed to provide one of plaintiff's medications. After the hearing, the court declined to hold defendant in contempt, but ordered the parties to submit an update within 14 days "as to whether or not there is currently compliance with the terms of the General Judgment." In response, defendant filed a memorandum asserting that he had complied with the general judgment and requesting that the court terminate jurisdiction. Defendant stated that plaintiff had a physiatry appointment in September 2019, received two physical therapy sessions, and was scheduled for two more sessions. Defendant acknowledged that the physiatrist recommended continuing plaintiff's Gabapentin and Zanaflex, discontinuing Baclofen, and obtaining a wheelchair evaluation from a physical therapist to improve plaintiff's back pain.

In a January 2020 hearing, the habeas court found that the physiatrist had said that it was appropriate and could be beneficial for plaintiff to see a pain specialist. Although defendant argued that the general judgment did not require him to comply with all of the physiatrist's recommendations or to send plaintiff to additional specialists and to follow those specialists' recommendations, the court ordered defendant to provide a pain specialist appointment within 30 days. The court retained jurisdiction and explained that it wanted DOC to be "more proactive about finding solutions and ways to assist [plaintiff] with his pain issues[.]"

In February 2020, a physical therapist evaluated plaintiff's wheelchair and observed numerous problems. Specifically, the physical therapist noted that the chair aggravated plaintiff's chronic back pain and that it was "old, worn out, and does not have the seating required to help provide posture support that [plaintiff] needs." Moreover, the wheelchair had worn brakes, broken arm rests "covered in tape," and the bearings needed replacing because they prevented the chair from rolling easily. Thus, the physical therapist recommended a custom wheelchair that cost $4,698.

That month, a pain specialist evaluated plaintiff and recommended increasing plaintiff's Gabapentin dosage and a follow-up appointment. Soon afterward, plaintiff filed motions requesting an emergency hearing, discharge under ORS 34.610(2), and that the court find defendant in contempt. Although plaintiff acknowledged that the original imprisonment was lawful, he argued that "defendant's willingness to continue to exercise deliberate indifference to plaintiff's serious medical needs is unlawful, and cannot apparently be ameliorated while plaintiff is in defendant's custody." As a consequence, plaintiff "ask[ed] for discharge, with all appropriate supervision in the community so he may seek and receive the adequate medical care he needs. There is no other apparent remedy available in this circumstance." Defendant responded that,

> "Neither defendant's deliberate decision to not increase the Gabapentin nor the inadvertent issue with the Zanaflex medication violated the judgment in this case or this Court's subsequent orders. As Defendants have complied with the plain language of this Court's order, there is no basis for such a finding, or such a drastic remedy such as release."

At the emergency hearing, defendant contended that DOC had discretion to determine medically appropriate treatment "in the light of a corrections context" and that the court did not order him to comply with all of the pain specialist's recommendations. The habeas court disagreed and explained that it had wanted a pain specialist to evaluate plaintiff to provide "the most recent recommendations and trends and modalities that are available to a patient with his unique condition." Although the court did not order

defendant to comply with the pain specialist's recommendations, the court ordered defendant to provide a follow-up appointment with the pain specialist within 14 days. Before the 14 days had elapsed, defendant represented that he cancelled "all non-essential outside medical appointments" due to the COVID-19 virus, and that plaintiff would receive a follow-up appointment "at the earliest possible date."

In April 2020, the court ordered defendant to schedule the follow-up appointment and to implement the pain specialist's recommendations within seven days. Defendant filed a motion for reconsideration and ultimately provided the appointment. Defendant represented that the pain specialist modified the initial recommendations, including continuing plaintiff's current Gabapentin dose and beginning Baclofen and morphine. Defendant stated that plaintiff's "medications currently mirror[ed]" the pain specialist's recommendations.

In June 2020, plaintiff again requested discharge. Plaintiff contended that defendant misconstrued the court's orders "to such a narrow degree as to render them meaningless." Specifically, plaintiff contended that defendant refused to comply with the pain specialist's initial recommendation to increase plaintiff's Gabapentin and to provide plaintiff with the recommended wheelchair. Plaintiff also asked the court to hold defendant in contempt and argued for monetary sanctions. Defendant maintained that he had complied with the general judgment's "plain language" and all subsequent orders. Defendant reiterated that the court did not direct him to follow all of the pain specialist's recommendations but instead "simply required Defendant to send Plaintiff to a consultation." After stating that it was "very unhappy with what has from the beginning appeared to be a cavalier indifference," the court ordered defendant to provide plaintiff a follow-up appointment with the pain specialist and to "follow and implement all of [the pain specialist's] recommendations with all immediate speed." The court also prohibited defendant from changing plaintiff's medications "other than to implement [the pain specialist's] recommendations."

In July 2020, the habeas court heard testimony concerning defendant's refusal to purchase the wheelchair

that the physical therapist had recommended. Although defendant had represented in March 2020 that plaintiff "was approved to undertake debt to obtain the wheelchair," DOC ultimately denied plaintiff's request and told him that he would need to save funds to buy the chair. Defendant explained that DOC policy requires adults in custody to purchase their own wheelchairs when they refuse DOC wheelchairs. After the court found defendant's conduct "unconscionable" and ordered defendant to provide plaintiff a wheelchair that met the physical therapist's specifications, defendant ordered the wheelchair and provided plaintiff a temporary wheelchair.

During the same hearing, plaintiff's primary care physician testified that even though plaintiff was receiving the maximum allowable Gabapentin dose under DOC policy, it would be "reasonable" to increase the dosage to the pain specialist's recommendation. After reiterating that it had retained jurisdiction to ensure compliance with its orders, the habeas court declined to order defendant's physicians "to administer medications that they think are harmful or potentially risky within the prison environment." However, the court stated that it would order plaintiff's release in 60 days if defendant did not comply with its orders.

Plaintiff had another appointment with the pain specialist in August 2020. Although the pain specialist repeated his initial recommendation to increase plaintiff's Gabapentin dosage, "recommend[ed] continuing Baclofen," and suggested that DOC "[c]onsider continuing [morphine]," defendant again refused to increase the Gabapentin due to DOC physicians' "medical judgment" and potential "over-sedation" concerns. Consequently, DOC "made several decisions" and created its own treatment plan, which included decreasing plaintiff's Baclofen and discontinuing his morphine.

In a November 2020 emergency hearing, the habeas court announced that it would order plaintiff's release "because it's unconscionable and inhumane for him to live with the kind of continuing pain that he is experiencing." The court also held DOC's Medical Division in contempt.

In January 2021, the habeas court entered a supplemental judgment and found that defendant was in contempt because he willfully refused to comply with the court's orders to follow the physiatrist and pain specialist's recommendations "and in some cases carelessly had failed to provide medications as directed, causing Plaintiff to suffer excruciating and preventable physical pain and emotional suffering in a manner that the court has found to be both avoidable and inhumane." Moreover, the court found that defendant's "infliction of pain and suffering extends past the initial grant of habeas relief to November 18, 2020" and that plaintiff "suffers from defendant's deliberate indifference in the conditions of his confinement." Thus, the court ordered plaintiff's release because it had "exhausted any hope" that defendant would comply with the pain specialist's recommendations. Defendant appeals the supplemental judgment.

## II.  ANALYSIS

### A.  *January 2021 Contempt Finding*

Defendant contends that the habeas court erred when it found him in contempt and argues that plaintiff's release was an improper remedy for that contempt. "We review a contempt judgment for any evidence to support the trial court's findings and, if such evidence exists, we determine whether the court's findings support the conclusion that a party is in contempt[.]" *OEA v. Oregon Taxpayers United*, 253 Or App 288, 303, 291 P3d 202 (2012). We conclude that the court did not err.

Contempt of court is the willful "[d]isobedience of, resistance to or obstruction of the court's authority, process, orders or judgments." ORS 33.015(2)(b). In other words, a party is in contempt when it has knowledge of a valid order and willfully disobeys that order. *State v. Beleke*, 287 Or App 417, 421, 403 P3d 481, *rev den*, 362 Or 208 (2017). Defendant argues that he did not willfully violate the general judgment and that he complied with the court's subsequent orders even though those orders were invalid. We disagree.

We begin with whether the habeas court erred by concluding that defendant willfully violated the general

judgment. Defendant does not dispute the judgment's validity or his knowledge of the judgment. Rather, defendant argues that the evidence does not support the finding that he willfully violated the judgment.

A violation is willful when it is made "intentionally and with knowledge that the act or omission was forbidden conduct." *State v. Mohammed*, 301 Or App 367, 370, 456 P3d 661 (2019), *rev den*, 366 Or 493 (2020) (quoting *State v. Nicholson*, 282 Or App 51, 62, 383 P3d 977 (2016)). "One way to prove that the violation of a court order is willful is by showing that a defendant, knowing that particular conduct was prohibited by the order, engaged in the prohibited conduct." *State v. Guzman-Vera*, 305 Or App 161, 166, 469 P3d 842, *rev den*, 367 Or 115 (2020). A party also willfully violates an order when the party "knew about the order but chose to ignore it, and then failed to comply with the order's requirements in that state of elective ignorance." *Id.*

Defendant represents that the general judgment ordered "three discrete terms" and that he complied with those terms. Defendant contends that he satisfied the first requirement by providing plaintiff a physiatry appointment and that the physiatrist's statement about referring plaintiff to a pain specialist was "merely a suggestion." We disagree.

Defendant's narrow interpretation of the general judgment disregards the context in which the habeas court entered the judgment. We have explained that a judicial opinion "must be read as a whole and must be read with the understanding that the court intended it to make sense." *Union Oil Co. v. Board of Co. Comm. of Clack. Co.*, 81 Or App 1, 6, 724 P2d 341 (1986) (rejecting petitioner's attempt to treat tests and factors from the same opinion as "wholly independent" of each other). Thus, a party may not construe an opinion's specific terms in isolation. *Id.* Even when a court issues an ambiguous judgment, "[w]e have the authority and, perhaps, the obligation" to construe the judgment in "light of the record to give effect to the trial court's intent." *Gourley v. Towery*, 82 Or App 32, 35, 727 P2d 144 (1986). If a court makes inconsistent findings, "we favor those that support the relief that the post-conviction court granted, as

long as there is evidence to support them." *Kincek v. Hall*, 217 Or App 227, 236, 175 P3d 496 (2007).

The general judgment determined that defendant had violated the Eighth Amendment because defendant "failed to provide adequate medical treatment" and that defendant was "deliberately indifferent in diagnosing and treating plaintiff's medical needs." In that context, the general judgment cannot be reasonably understood in the manner in which defendant asserts—as merely requiring defendant to provide one physiatry appointment and up to four physical therapy appointments. The judgment was put in place to ensure that defendant *provided* adequate medical treatment and diagnosed and *treated* plaintiff's medical needs. And the judgment specifically ordered defendant to provide plaintiff with a physiatry appointment for analysis of "possible medical interventions to improve pain, muscle spasm, and overall levels of Plaintiff's physical and mental functional abilities." In that context, a medical appointment *by itself* would not cure the Eighth Amendment violation. Taken as a whole, the judgment clearly contemplated that defendant would implement the physiatrist's recommendations to manage and treat plaintiff's pain, thereby providing constitutionally required medical care. Contrary to defendant's argument, by sending plaintiff to a physiatrist for "consultation and evaluation" but then refusing to follow or implement the physiatrist's recommendations, defendant did not provide plaintiff adequate medical treatment or treat his medical needs, especially in light of the court's prior finding of Eighth Amendment deliberate indifference.

Moreover, defendant's conduct in response to the general judgment demonstrates that he did not interpret the general judgment as narrowly as he advances on appeal. In his memorandum seeking to terminate the habeas court's jurisdiction, defendant explicitly stated that he had complied with the general judgment and that "[the physiatrist] made several findings and recommendations about Plaintiff's condition and treatment going forward, *which ODOC will follow as outlined above*." (Emphasis added.) Defendant thus understood that compliance with the judgment included implementing and following the physiatrist's

recommendations. Therefore, defendant's failure to "follow" the physiatrist's recommendations, despite relying on that promised compliance as a basis to terminate jurisdiction, is sufficient evidence to support the habeas court's finding that defendant willfully violated the general judgment.

But that is not the only evidence of defendant's willful disobedience of the court's order. As a stark example, the record demonstrates that defendant obstructed plaintiff's ability to obtain a recommended wheelchair. After the physiatrist recommended that a physical therapist evaluate plaintiff's wheelchair to improve plaintiff's back pain, defendant provided plaintiff that appointment. The physical therapist found that plaintiff's current chair aggravated plaintiff's back pain and did not adequately support his posture. The wheelchair also was in serious disrepair—the armrests were broken and "covered in tape," the brakes were worn, the bearings needed replacing, and it did not roll easily. Citing DOC policy, defendant refused to pay for the recommended chair because DOC did not offer it and because plaintiff "should be able to be accommodated by DOC wheelchairs." Defendant further barred plaintiff from undertaking personal debt to purchase it.

Again, defendant's actions must be viewed in context of the habeas court's determination that defendant's mistreatment of plaintiff over the course of four years amounted to an Eighth Amendment violation. Compliance with the general judgment to remedy that constitutional violation required defendant to provide needed medical care to plaintiff. Instead, he raised administrative roadblocks and repeatedly reinterpreted expert recommendations. Because the general judgment explicitly directed defendant to provide plaintiff with medical care in a way that would remedy the constitutional violations, defendant's decision to ignore those directions and to continue to rely on his own constitutionally deficient practices to treat plaintiff's pain demonstrates that he willfully violated the general judgment.

In sum, we are not persuaded by defendant's interpretation of the general judgment. *See Union Oil Co.*, 81 Or App at 6. The general judgment ordered defendant to provide plaintiff with a physiatry appointment to address

plaintiff's "extreme pain" and functional abilities. Thus, when understood in context, the judgment required defendant to implement the physiatrist's recommendations to cure the Eighth Amendment violation. Despite the court's extensive findings that defendant's omissions had impaired plaintiff's opportunity for improvement over several years— findings that defendant does not dispute—defendant contended that he was not required to comply with the physiatrist's recommendations, then unilaterally selected which recommendations to follow and which to ignore. Therefore, ample evidence supports the habeas court's conclusion that defendant willfully violated the general judgment. Because the habeas court did not err when it determined that defendant willfully violated the general judgment, we do not reach defendant's argument that he complied with the habeas court's subsequent orders.

B. *Plaintiff's Release from Custody*

We now turn to defendant's two arguments concerning plaintiff's release.[4]

First, defendant argues that the habeas court erred by releasing plaintiff because release is not an available remedy for a finding of contempt. Second, defendant argues that the habeas court erred when it released plaintiff because plaintiff was required to file new habeas petitions under ORS chapter 34 concerning any constitutional violations that occurred *after* the habeas court entered the general judgment.[5] We need not decide whether plaintiff's release is an improper remedy for defendant's contempt because, as

---

[4] We understand the parties and the habeas court to have used the terms "release" and "discharge" interchangeably. Accordingly, we describe the parties' arguments as they presented them to the habeas court, and we use those terms interchangeably as well for the purposes of this opinion.

[5] Plaintiff contends that defendant did not preserve his argument that the habeas court erred in ordering plaintiff's release as a remedy for contempt even though the court discussed plaintiff's release in November 2020 and December 2020. We observe that following the December 2020, hearing defendant objected to plaintiff's proposed supplemental judgment and contended that he was not in contempt and that the court could not direct defendant to provide different medical care or release plaintiff without a new finding of deliberate indifference. Because defendant's objections identified the relevant issue, plaintiff's release, we conclude that defendant's argument is adequately preserved. *See State v. Kamph*, 297 Or App 687, 694, 442 P3d 1129 (2019) (explaining that "the descending hierarchy of importance in evaluating whether an issue is preserved is first

explained below, ORS 34.610 and the record demonstrate that plaintiff's release was a lawful remedy for the Eighth Amendment violation raised in his writ of habeas corpus.

We review a court's judgment granting habeas corpus relief for errors of law. *Alexander v. Gower*, 200 Or App 22, 24, 113 P3d 917 (2005), *rev den*, 340 Or 34 (2006). "To the extent that the trial court's factual findings are supported by evidence in the record, those findings will not be disturbed." *Id.*

Although defendant never disputed below that release is a lawful remedy in a habeas corpus proceeding, and does not do so on appeal,[6] we have an independent duty to correctly interpret the statute at issue. *Stull v. Hoke*, 326 Or 72, 77, 948 P2d 722 (1997) ("In construing a statute, this court is responsible for identifying the correct interpretation, whether or not asserted by the parties."). Using our familiar framework, *State v. Gaines*, 346 Or 160, 206 P3d 1042 (2009), we determine that a habeas court may order an adult in custody's discharge under ORS 34.610(2) when the court has found that prison officials were deliberately indifferent under Article I, section 16, and the Eighth Amendment and that the officials' failure to cure the constitutional violation is so significant that the adult in custody's sentence is no longer lawful and instead constitutes cruel and unusual punishment.

We begin with the statute's text and context. *Gaines*, 346 Or at 166. Under ORS 34.610(2), a "prisoner shall be discharged" if "[t]he original imprisonment was lawful, yet by some act, omission or event which has taken place afterwards, the party has become entitled to be discharged." We have explained that,

---

and most important, identifying the issue; second, and less important, identifying the source of law; and third, and least important, the particular argument").

[6] We observe that defendant advanced only fact-based arguments concerning plaintiff's release to the habeas court and did not challenge the court's authority to order release as a remedy in a habeas case alleging deliberate indifference to serious medical needs. Specifically, he contended that release was not appropriate because he had complied with the general judgment. Similarly, on appeal, defendant acknowledges that, "ordering an inmate's release and discharge from sentence is a proper remedy in a habeas corpus action" and stated at oral argument that "with habeas corpus, the trial court has some options. The primary option is to order a plaintiff to be released from custody."

> "[ORS 34.610] confirms that an inmate can challenge the authority for his or her continued confinement—even though the inmate initially was incarcerated under a lawful judgment—if some later act, omission, or event has made continued confinement unlawful. By referring without restriction to 'some act, omission or event,' the statute *places no limit* on the permissible legal sources for claims that an inmate is entitled to discharge."

*Colby v. Thompson*, 183 Or App 311, 317, 52 P3d 1058 (2002), *rev den*, 335 Or 180 (2003) (emphasis added).

We also consider the "surrounding statutory framework." *Morsman v. City of Madras*, 203 Or App 546, 561, 126 P3d 6, *rev den*, 340 Or 483 (2006). ORS chapter 34 governs habeas corpus proceedings. *Bedell v. Schiedler*, 307 Or 562, 565, 770 P2d 909 (1989). In particular, it codifies the writ of habeas corpus and provides certain processes and procedures when litigating those cases. ORS 34.310 - 34.370. As relevant here, the Supreme Court adopted the Eight Amendment deliberate indifference standard for habeas corpus relief and has held that plaintiffs can bring habeas corpus cases to challenge their medical care:

> "We hold that the Eighth Amendment's 'deliberate indifference to serious medical needs' standard is the appropriate standard under Article I, section 16. To state a cognizable claim for habeas corpus relief under Article I, section 16, a prisoner must allege that the prisoner has a serious medical need that has not been treated in a timely and proper manner and that prison officials have been deliberately indifferent to the prisoner's serious medical needs."[7]

*Billings v. Gates*, 323 Or 167, 180-81, 916 P2d 291 (1996) (quoting *Estelle v. Gamble*, 429 US 97, 106, 97 S Ct 285, 50 L Ed 2d 251 (1976)); *see also Estelle*, 429 US at 102 ("Thus, we have held repugnant to the Eighth Amendment punishments which are incompatible with the evolving standards of decency that mark the progress of a maturing society." (Internal quotation marks omitted.)).

ORS 34.310 provides that "[e]very person imprisoned or otherwise restrained of liberty, within this state,

---

[7] Article I, section 16, provides, in relevant part, that "[c]ruel and unusual punishments shall not be inflicted, but all penalties shall be proportioned to the offense."

except in the cases specified in ORS 34.330, may prosecute a writ of habeas corpus to inquire into the cause of such imprisonment or restraint, and if illegal, to be delivered therefrom." By its terms, ORS 34.310 differentiates between people who are "imprisoned" and those who are "otherwise restrained of liberty," and allows both groups to seek writs of habeas corpus. We have previously recognized that even adults in custody who are incarcerated pursuant to valid judgments may nonetheless suffer from additional restraints on their liberty, such as solitary confinement or other physical restraints, or mistreatment resulting in a deprivation of constitutional rights. *Penrod/Brown v. Cupp*, 283 Or 21, 581 P2d 934 (1978). In *Penrod/Brown*, we explained that the additional restraints created a "prison within a prison" from which the adult in custody could seek release. *Id*. at 25. Finally, under ORS 34.720, "A person who has been finally discharged upon a proceeding by habeas corpus may not again be imprisoned, restrained or kept in custody for the same cause."[8]

In sum, ORS 34.610(2) allows an adult in custody to seek habeas relief—including discharge—when the circumstances of an originally lawful imprisonment change such that the adult in custody becomes entitled to discharge. Even though plaintiff argued that defendant's conduct violated Article I, section 16, and the Eighth Amendment, ORS 34.610 "places no limit on the permissible legal sources for claims that an inmate is entitled to discharge." *Colby*, 183 Or App at 317.

---

[8] We do not consider the statute's inconclusive legislative history helpful in our statutory construction analysis. To be sure, as the dissent points out, some of the remarks could be interpreted to support an understanding that discharge is not available if a plaintiff seeks habeas relief challenging the conditions of confinement. But the legislators did not specifically discuss how the statute would apply if a superintendent refused to comply with court orders designed to cure an Eighth Amendment violation and the plaintiff was required to endure a sentence that amounted to cruel and unusual punishment. In any event, inconclusive and ambiguous legislative history does not alter the statute's plain text, which expressly authorizes discharge in plaintiff's case. *See Gaines*, 346 Or at 172-73 ("[A] party seeking to overcome seemingly plain and unambiguous text with legislative history has a difficult task before it. *** ORS 174.020 obligates the court to consider proffered legislative history for whatever it is worth—and what it is worth is for the court to decide.").

The text and context of ORS 34.610(2) demonstrate that when a plaintiff alleges deliberate indifference to a serious medical need and a court finds that prison officials have been deliberately indifferent to that need, the habeas court properly orders the plaintiff's discharge from the illegal "restraint" and requires the officials to give the plaintiff necessary medical care. By providing that necessary medical care, prison officials "release" the plaintiff from the "prison within a prison" and maintain a lawful basis to hold the adult in custody. However, if prison officials refuse to follow the court's order and continue to provide constitutionally inadequate medical care, then the illegal "restraint" remains. In that situation, by virtue of the prison officials' actions, the plaintiff is forced to serve a sentence that amounts to cruel and unusual punishment, which is prohibited by the Article I, section 16, and the Eighth Amendment. Just as a court is prohibited from sentencing a person to a term of imprisonment that violates those constitutional provisions, prison officials' actions and omissions cannot create conditions of imprisonment that violate Article I, section 16, and the Eighth Amendment. If they do so, the officials are no longer holding the plaintiff lawfully, but in violation of the plaintiff's constitutional rights. Thus, even though the "original imprisonment was lawful," a lawful sentence that becomes unconstitutional entitles an adult in custody to discharge under ORS 34.610(2).

Although this is the first time that we have explicitly held that a court can order a discharge in a habeas case under Article I, section 16, and the Eighth Amendment, we anticipate that our decision will have limited practical effect. That is because "[t]he deliberate indifference standard is high[.]" *Easley v. Bowser*, 306 Or App 460, 462, 474 P3d 915 (2020) (internal quotation marks omitted); *see also Billings*, 323 Or at 181 ("Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain[.]"). Our review of the case law indicates that the allegations of adults in custody regarding their medical treatment rarely meet the high standard to allege or prove deliberate indifference. *See, e.g.*, *Woodroffe v. Nooth*, 257 Or App 704, 712, 308 P3d 225, *rev den*, 354 Or 491 (2013) (concluding "that plaintiff failed to establish a

genuine issue of material fact with respect to his assertion that defendant has been deliberately indifferent in treating his ADHD"); *Shelton v. Armenakis*, 146 Or App 521, 524, 934 P2d 512 (1997) ("[P]laintiff has failed to controvert the evidence submitted by defendant that his condition has been treated in a timely and proper manner and that defendant has not been deliberately indifferent to his medical needs.").

When courts do find deliberate indifference, prison officials should swiftly cure constitutional violations by providing the needed medical care, thus ensuring that adults in custody are no longer subject to cruel and unusual punishment. In those cases, the officials' compliance with a court order to provide medical treatment should suffice to release the adult in custody from the unconstitutional restraint. Indeed, under Article I, section 16, the Eighth Amendment, and ORS chapter 34, discharge from custody will only be available in the rare cases when, after a court finds that prison officials violate an adult in custody's constitutional rights through deliberate indifference, the prison officials fail to cure the deliberate indifference and continue to subject the adult in custody to cruel and unusual punishment. Because that was the case for plaintiff here, release was an available remedy under ORS 34.610(2).

The dissent faults us for not providing more specific guidance on when a plaintiff would be entitled to discharge if "alternative remedies," such as transfer to a different institution under ORS 34.320, could address a constitutional violation. 335 Or App at 148-49 (Powers, J., dissenting). We decline to opine on factual situations not before us or to create a different rule for habeas cases that involve an Eighth Amendment claim. Instead, we hold that, as is true in all habeas cases, a plaintiff pursuing an Eighth Amendment claim is "entitled to be discharged" when, at the time of the request, discharge is necessary to cure the constitutional violation. In this case, the superintendent persistently refused to follow the court's orders and maintained that he had complied with the general judgment. As a consequence, at the time of the November 2020 emergency hearing, discharge was necessary to cure the Eighth Amendment violation. Although a habeas court presented with different facts

could conceivably determine that other remedies short of discharge—such as transfer—would be sufficient to cure an Eighth Amendment violation, that is not the case before us. Therefore, we decline to further address the issue.

Having determined that the statute allows for the relief the habeas court granted, we turn to the arguments that defendant did raise below and to us. Defendant argues that plaintiff advanced new complaints "under the guise of noncompliance hearings" and that the habeas court improperly "granted plaintiff habeas relief based on plaintiff's post-judgment complaints about his medical treatment." According to defendant, plaintiff was instead required to allege any new constitutional violations in separate habeas petitions and the court was required to "employ the appropriate statutory procedures for litigating a habeas claim" provided in ORS chapter 34 to "ensure that the court is looking at the issue through the lens of a constitutional violation and not in terms of whether a party has complied with or violated a court order."[9] In response, plaintiff argues that the court "did not grant new or additional habeas relief to plaintiff. Rather, the orders provided more specific direction on how to achieve the original intent of the general judgment." We agree with plaintiff.

Defendant's arguments against release rely on the premise that the habeas court erred when it determined that defendant did not comply with the general judgment. We have concluded otherwise, and our answer above resolves that issue here. Although defendant argues that he complied with the general judgment by September 2019, we reject defendant's view of the record. As discussed above, sufficient evidence supports the court's determination that defendant willfully disobeyed the general judgment and that the constitutional violation—defendant's deliberate indifference—continued through the pendency of the case. Therefore, plaintiff was not required to file new petitions alleging deprivation of his rights.

The dissent focuses on the fact that plaintiff did not seek release in his initial petition or his replication. That

---

[9] Defendant relies on ORS 34.362, ORS 34.340, ORS 34.421, ORS 34.680, ORS 34.670, and ORS 34.695.

omission is not dispositive to the habeas court's authority to discharge plaintiff for at least three reasons.

First, ORS chapter 34 does not require that a plaintiff plead a particular remedy in the replication. Under ORS 34.670, the plaintiff in the replication may controvert facts in the defendant's return and also "may allege therein any fact to show, either that imprisonment or restraint of the plaintiff is unlawful, or that the plaintiff is entitled to discharge." That is, the plaintiff is required to allege facts sufficient to state a claim but is not required to plead a particular remedy. *Cf. Bedell*, 307 Or at 567 ("The replication must allege with particularity facts which, if true, would entitle the plaintiff to habeas corpus relief."). That statute then states that it is the court's role to fashion the appropriate remedy after hearing the evidence, providing: "Thereupon the court or judge shall proceed in a summary way to hear such evidence as may be produced in support of or against the imprisonment or restraint, *and to dispose of the party as the law and justice of the case may require.*" ORS 34.670 (emphasis added). Thus, the statute permitted the court to order plaintiff's release "as the law and justice of the case" required.

Second, under ORCP 23 B, an issue can be tried by express or implied consent, even if it is not included in the original pleading.[10] And when an issue is tried by express or implied consent, "a pleading for all practical and legal purposes is automatically amended." *Ogle v. Nooth*, 365 Or 771, 789, 453 P3d 1274 (2019) (quoting *Whinston v. Kaiser Foundation Hospital*, 309 Or 350, 788 P2d 428 (1990), *overruled in part on other grounds by Shoup v. Wal-Mart Stores, Inc.*, 335 Or 164, 61 P3d 928 (2003) (emphasis omitted)). In *Ogle*, the Supreme Court held that an undisputed issue is tried by implied consent when the adverse party fails "to object to evidence that is clearly directed to a new issue" or responds on the merits to the issue. 365 Or at 798, 791.

In this case, plaintiff requested release in his trial memorandum and in his post-judgment filings and

_____

[10] "Unless the habeas corpus statutes provide otherwise, the Oregon Rules of Civil Procedure govern habeas corpus actions." *Villarreal v. Thompson*, 142 Or App 29, 31, 920 P2d 1108 (1996).

hearings. Although defendant objected to release as a remedy for contempt, defendant never argued that discharge was unavailable as a remedy for the habeas violations. Instead, defendant insisted that he had complied with the general judgment. Defendant's fact-based arguments amounted to a response on the merits of the issue and lead to a conclusion that the issue was tried by implied consent.

Finally, discharge is not a legal claim. It is a type of relief that can be requested. And ORCP 67 C allows a trial court to grant relief "different in kind from or exceeding the amount prayed for in the pleadings" after "reasonable notice and opportunity to be heard are given to any party against whom the judgment is to be entered." Here, plaintiff's repeated requests provided defendant that notice and opportunity to be heard.[11]

Although our opinion has engaged with numerous complex legal doctrines, this case is ultimately about prison officials' mistreatment of a human being who was in their custody. On that note, we observe that when it ultimately ordered plaintiff's discharge, the habeas court explained that discharge was appropriate because defendant's conduct caused "[p]laintiff to suffer excruciating and preventable physical pain and emotional suffering in a manner that the court has found to be both avoidable and inhumane." Defendant points to no case law that limits a habeas court's authority to order discharge when a person becomes entitled to it after a prison official fails to comply with the court-ordered remedy to cure a constitutional violation. Because sufficient evidence supports the court's determination that defendant did not cure the deliberate indifference, the court did not err when it ordered discharge.

Affirmed.

**POWERS, J.,** dissenting.

The majority opinion affirms a supplemental judgment in a habeas corpus case that grants relief not sought by plaintiff in the replication. The relief that the trial court granted and that is affirmed by the majority opinion is

---

[11] In *Ogle*, the Supreme Court also considered the issue of lack of prejudice in determining that the issue was tried by implied consent. 365 Or at 791.

plaintiff's release—not just from the prison where officials were adjudged to be deliberately indifferent to plaintiff's medical care, but release from incarceration altogether—thereby shortening a lawfully imposed sentence. In my view, the arrogation of judicial power is both unprecedented and inadequately explained. First, we should not affirm a habeas judgment that grants relief beyond what plaintiff requested in his principal pleading in the case. Second, even assuming release from custody was a proper remedy, we have not adequately explained or given guidance on when a plaintiff would be entitled to discharge from a lawfully imposed sentence based on a conditions of confinement habeas claim. Accordingly, I respectfully dissent.

In Oregon, every adult in custody (AIC) has the right to be incarcerated under conditions that comply with state and federal constitutional standards. *Barrett v. Peters (A155789)*, 274 Or App 237, 240, 360 P3d 638 (2015), *aff'd*, 360 Or 445, 383 P3d 813 (2016). When those conditions are the type that require "immediate judicial attention" and if "no other timely remedy is practicably available" to an AIC, a petition for a writ of habeas corpus may be filed. ORS 34.362(2). Secured by Article I, section 23, of the Oregon Constitution, habeas corpus proceedings are governed by statute. *See Bedell v. Schiedler*, 307 Or 562, 565-568, 770 P2d 909 (1989) (examining the statutory framework for habeas corpus actions); *see also* ORS 34.310 (providing that "[e]very person imprisoned or otherwise restrained of liberty, within this state, except in the cases specified in ORS 34.330, may prosecute a writ of habeas corpus to inquire into the cause of such imprisonment or restraint, and if illegal, to be delivered therefrom").

Under the statutory framework, after a petition for writ of habeas corpus is filed, the circuit court must allow the writ without delay unless a narrow set of circumstances exist (which are not present in this case), and the clerk shall issue the writ immediately. *Bedell*, 307 Or at 566; ORS 34.370. If the writ issues, the petition "ordinarily ceases to have any function and is not considered part of the pleadings, unless it is incorporated into or treated as plaintiff's replication." *Bedell*, 307 Or at 566-67. The replication is the

plaintiff's principal pleading. *Id.* at 567. Here, plaintiff's replication and petition contain the same content, none of which requested release or discharge as a remedy.

To advance a medical habeas claim under the state and federal constitutions, a plaintiff must allege that the plaintiff "has a serious medical need that has not been treated in a timely and proper manner and that prison officials have been deliberately indifferent to the [plaintiff's] serious medical needs." *Billings v. Gates*, 323 Or 167, 181, 916 P2d 291 (1996) (adopting the federal standard set forth in *Estelle v. Gamble*, 429 US 97, 106, 97 S Ct 285, 50 L Ed 2d 251 (1976)). Deliberate indifference "constitutes the unnecessary and wanton infliction of pain" by prison officials in their response to an AIC's serious medical needs or by corrections officers intentionally denying or delaying access to medical care or intentionally interfering with prescribed treatment. *Billings*, 323 Or at 181. A plaintiff must show "more than an honest difference of medical opinion about [the] correct diagnosis and necessary treatment." *Id.* Here, plaintiff's replication sought specific relief for defendant's deliberate indifference to his medical needs ranging from injunctive relief "to be evaluated by a [physiatrist] in the Willamette Valley" and "to see a pain specialist in the [Willamette] Valley & a higher pain medication management plan" to more specific requests such as "to have a contrast MRI," "a Tens [transcutaneous electrical nerve stimulation] Unit," and a "knee pillow." In all, plaintiff's replication included 12 specific requests for habeas relief. None of those claims asked for release or discharge from plaintiff's sentence.

The parties litigated the claims, and the trial court ultimately granted plaintiff habeas relief on some of his claims. As the majority opinion accurately recounts, 335 Or App at 126-27, the general judgment granted plaintiff relief in three specific ways, which can be summarized as (1) "provide consultation and evaluation with a board certified [p]hysiatrist"; (2) "provide [p]hysical [t]herapy with a licensed [p]hysical [t]herapist to commence within a reasonable period of time and to continue until no longer indicated in the opinion of the treating [p]hysical [t]herapist"; and (3) "restore the drugs gabapentin and Zanaflex as previously

prescribed" and "to make no further changes to Petitioner's medications until [an] examination and review of [the] drug regimen by a qualified [p]hysiatrist." The judgment also provided that the court retained jurisdiction "for the purpose of ensuring compliance with the terms of the judgment in Plaintiff's favor." Again, nothing in that judgment spoke to plaintiff's release or discharge from his sentence.

In the months following the general judgment, which issued in July 2019, the trial court began ordering defendant to comply with terms outside of the original judgment. As the majority opinion explains, plaintiff filed numerous motions to hold defendant in contempt, and the trial court issued several post-judgment orders expanding the nature of habeas relief. This shifting of the litigation culminated in January 2021, when the court issued the supplemental judgment ordering plaintiff's immediate release, cutting short plaintiff's lawfully imposed sentence. In my view, we should not affirm that supplemental judgment ordering immediate release because plaintiff did not request that specific type of relief in his replication. *See, e.g.*, *Hurlbutt v. Hurlbutt*, 36 Or App 721, 725, 585 P2d 724 (1978), *rev den*, 285 Or 73 (1979) (explaining that a "judgment must be responsive to the issues framed by the pleadings and a trial court has no authority to render a decision on issues not presented for determination").

To compound the problem, the trial court justified its order of immediate release based on defendant's inadequate response to relief that was ordered post-judgment. That is, despite plaintiff requesting specific relief in his replication about a pain specialist, the general judgment did not grant him that relief. Indeed, the trial court did not attempt to justify the supplemental judgment back to the terms of the general judgment; rather, it pointed to post-judgment orders and circumstances that occurred after the general judgment issued in July 2019. That procedure does not appear to follow the statutory framework for how habeas claims are litigated. *See, e.g.*, ORS 34.650 (providing for notice to any person that has "an interest in continuing imprisonment or restraint of the party" and that no order shall be made for discharge "until it shall appear that the party so interested"

or the party's attorney has notice); ORS 34.660 (providing that the court or judge shall make no order for discharge of the party until notice of the return is given to the district attorney of the county where the party is imprisoned or restrained).

Rather than acknowledge that problem, the majority opinion takes a broad view of that general judgment concluding that it "clearly contemplated that defendant would implement the physiatrist's recommendations to manage and treat plaintiff's pain[.]" 335 Or App at 133. That broad view of the judgment, however, does not address how the trial court could empower itself to grant relief not requested by plaintiff in his replication.[1]

Further, in my view, it is no answer for the majority opinion to cite to ORCP 67 C.[2] First, there are limits to the scope of relief a trial court may grant, even under ORCP 67 C. *See, e.g.*, *Cheryl Wilcox Property Management v. Appel*, 110 Or App 90, 94, 821 P2d 428 (1991) (concluding that ORCP 67 C could not sustain the trial court's damages award for a theory of recovery that was not sought); *City of Portland v. Hespe*, 69 Or App 663, 665, 687 P2d 804 (1984) (noting that, "[a]lthough under ORCP 67 C a court is empowered under certain circumstances to grant relief not demanded in the pleadings, the rule does not extend the court's authority to grant relief on a cross-claim which was never pleaded"). Second, as noted, the trial court did not even attempt to tie its relief to the original habeas judgment; rather, the supplemental judgment articulates that it is enforcing post-judgment orders. Habeas proceedings are not designed to

---

[1] Part of the confusion may lie in the majority opinion's conflating the relief requested in plaintiff's emergency motions for contempt with the relief requested—and ultimately, granted by the trial court—in plaintiff's principal habeas pleading, *viz.*, the replication. *See, e.g.*, 335 Or App 142 (noting that plaintiff requested release in his "post-judgment filings and hearings"). I do not understand the majority opinion to take a position on release or discharge as a remedy for contempt; rather, the majority opinion grounds its reasoning in the statutory framework for habeas relief.

[2] ORCP 67 C provides:

"Every judgment shall grant the relief to which the party in whose favor it is rendered is entitled. A judgment for relief different in kind from or exceeding the amount prayed for in the pleadings may not be rendered unless reasonable notice and opportunity to be heard are given to any party against whom the judgment is to be entered."

have rolling requests for relief. Here, the relief granted was not only not requested by plaintiff in his replication, but the basis for the relief was not part of the terms of the original general judgment.

For example, although plaintiff's replication sought injunctive relief to see a pain specialist in the Willamette Valley, the general judgment granting habeas relief did not include any mention of a pain specialist. Nonetheless, the trial court issued a post-judgment order for plaintiff "to be seen by a pain specialist" and later found that defendant's failure to follow that specialist's recommendations provided a basis for plaintiff's immediate release. Thus, in my view, ORCP 67 C provides little support to affirm the trial court's supplemental judgment that grants relief beyond what is requested by plaintiff in his replication.

Finally, even assuming that release from custody is a proper remedy for a conditions of confinement claim, we have not adequately explained or given guidance on when a plaintiff would be entitled to discharge from a lawfully imposed sentence.[3]

In my view, it is an extraordinary remedy to discharge an AIC entirely from a lawfully imposed sentence without considering alternative remedies that address the constitutional violation. For instance, ORS 34.320

---

[3] It is far from clear, in my view, whether, when amending the habeas framework in response to the Supreme Court's decision in *Bedell*, the legislature intended discharge from a lawfully imposed sentence to be an option for relief for a claim challenging the conditions of confinement. The legislative history is inconclusive; however, there appears to be an underlying assumption shared by more than one person who testified on the bill that conditions of confinement claims do not lead to release. *See* Tape Recording, Senate Committee on Judiciary, HB 2391, May 29, 1991, Tape 194, Side B (statement of Roy Pulvers) (explaining that the bulk of habeas cases are conditions of confinement cases where "even if successful, the individual would still be within the authority of the defendant to keep them in confinement or restraint"); *id.* (statement of Attorney General Dave Frohnmayer) (describing cases where the AIC has "no hope of getting out of the institution at all but where it's a challenge to the treatment within the institution that's at stake"). I agree with the majority opinion that, if we were to affirm the judgment, we have an independent duty to construe ORS 34.610(2) correctly, despite the parties not engaging in the analysis. *See Stull v. Hoke*, 326 Or 72, 77, 948 P2d 722 (1997). However, because I would not affirm the supplemental judgment given the circumstances that the relief granted was not requested by plaintiff in his replication, it is unnecessary to delve into whether discharge from a sentence is a lawful remedy for a conditions of confinement claim.

contemplates that a plaintiff may be transferred while a habeas claim is pending and that the transfer could adequately address the claims such that the court shall dismiss the petition. *See Garges v. Premo*, 362 Or 797, 805-06, 421 P3d 345 (2018) (recognizing that a transfer to a different correctional institution may alter the conditions of confinement such that a plaintiff's claim that those conditions are unconstitutional may become moot depending on the facts regarding the requested relief). Simply declaring that discharge from custody will be available only "in the rare cases"— without more of an explanation of what triggers that relief instead of other relief such as a transfer to another institution or the specific relief requested in the replication—does not explain what it means for an AIC to become "entitled to be discharged" as that phrase is used in ORS 34.610(2).

Today, for the first time, we affirm in a habeas corpus case a grant of relief—release from prison—that plaintiff did not ask for in his replication. Moreover, in so doing, we hold without adequate explanation that the terms of a lawful sentence may be cut short based on a violation of plaintiff's constitutional rights. In my view, although I share the deep frustration with plaintiff's medical care expressed by the majority opinion, we should reverse the judgment that goes beyond plaintiff's prayer for relief in his habeas pleading and, at the very least, we should better explain how an AIC can be considered entitled to discharge from the incarceration portion of a lawfully imposed sentence. Accordingly, I respectfully dissent.